**Paubla BENAVIDES, Administrator of the Estate of Martin Benavides, Deceased, Appellant,**

v.

**J.C. PENNEY LIFE INSURANCE COMPANY, Appellee.**

No. 94–1355.

Supreme Court of Iowa.

Oct. 25, 1995.

Rehearing Denied Nov. 17, 1995.

---

Dean T. Jennings of McGinn, McGinn & Jennings, Council Bluffs, for appellant.

John M. French and Frederick T. Harris of Kennedy, Holland, DeLacy & Svoboda, Council Bluffs, for appellee.

Considered by McGIVERIN, C.J., and LARSON, CARTER, NEUMAN, and TERNUS, JJ.

TERNUS, Justice.

Martin Benavides died in his closed garage at the wheel of his parked car after spending ten hours at his favorite bar. The medical examiner concluded that Benavides died of carbon monoxide poisoning; alcohol[1] intoxication was listed as a contributing factor. The district court ruled as a matter of law that Benavides' estate could not recover under a life insurance policy issued to Benavides by appellee, J.C. Penney Life Insur-

---

1. The death certificate listed "ethanol intoxication" as a contributing factor. *See* Sanders Dictionary & Encyclopedia of Laboratory Medicine and Technology 545 (1984) (ethanol is the depressant drug in alcoholic beverages; ethanol is also referred to as alcohol and ethyl alcohol). We use the more common word, "alcohol," in this opinion rather than the scientific term used by the medical examiner.

ance Company. We agree the insurance policy's intoxication exclusion precludes recovery by the estate as a matter of law. Therefore, we affirm the district court's grant of summary judgment to the insurance company.

## I. *Background Facts and Proceedings.*

Because the district court decided this case on a motion for summary judgment, we review the whole record in a light most favorable to the party opposing the motion. *Farm & City Ins. Co. v. Anderson,* 509 N.W.2d 487, 489 (Iowa 1993). The record contains the following undisputed facts.

J.C. Penney Life Insurance Company issued a life insurance policy to Martin Benavides. That policy contained an exclusion for death resulting from "an injury occurring while the [insured] is intoxicated." The policy was in effect on June 3, 1992, the date that Martin Benavides died.

Before his death, Benavides had been drinking alcohol for ten hours at a bar he typically frequented. At 1:30 a.m. he left the bar and apparently drove home without incident. As he drove into his garage, however, he grazed the garage door with his car, causing slight damage to the door and scrapes on the side of his car. He parked his car at such an unusual angle that the interior door between the garage and the house could not be opened.

On the afternoon of June 4, 1992, Benavides' fiancee discovered Benavides' lifeless body in the garage. Several facts are worth noting: the garage door was down; the ignition was on but the engine was not running; the headlights were off; the car radio was turned on, but not working because the battery was drained; Benavides was wearing his seat belt; and Benavides' feet were on the accelerator and the brake.

An autopsy conducted fourteen hours after the body was discovered revealed a blood alcohol level of .290. The physician conducting the autopsy noted that alcohol can form in decomposed bodies; however, the blood alcohol level here was so elevated that it indicated "significant" alcohol consumption before death. The medical examiner listed carbon monoxide poisoning from the car's exhaust as the cause of death, but he also found alcohol intoxication to be a contributing factor.

Benavides' fiancee stated that Benavides got drunk almost every night and it would not be unusual for him to pass out at the wheel. Moreover, witnesses interviewed by the police denied that Benavides had any motivation or desire to commit suicide.

Appellant, Paubla Benavides, as administrator of the Estate of Martin Benavides, sued J.C. Penney Life Insurance Company to collect benefits under the life insurance policy. Both parties filed motions for summary judgment. The district court overruled the estate's motion and granted the insurer's motion, ruling as matter of law that the intoxication exclusion precluded recovery under the policy. The estate appealed.

## II. *Scope of Review.*

We review a summary judgment ruling on error. *Farm & City Ins. Co.,* 509 N.W.2d at 489. In doing so, we examine the record before the district court to decide whether a genuine issue of material fact exists and whether the court correctly applied the law. *Id.*

## III. *Intoxication.*

■ The estate claims that a factual question exists concerning whether Benavides was intoxicated at the time of his death. A fact issue will preclude summary judgment when reasonable minds would differ on how to resolve that issue. *Central Nat'l Ins. Co. v. Insurance Co. of N. Am.,* 522 N.W.2d 39, 42 (Iowa 1994). Therefore, we examine the record to determine whether reasonable minds would disagree on whether Benavides was intoxicated. Before we can do that, however, we must know the meaning of the term "intoxicated."

A. *Meaning of the word "intoxicated."* The life insurance policy defines the term "intoxicated":

> **INTOXICATED** means that which is determined and defined by the laws and jurisdiction of that geographical area where the Loss or cause of Loss was incurred.

The policy defines the term "Loss" to include death. Therefore, the term "intoxicated" has the meaning given it by the laws of Iowa, the state where Benavides died. *Brown v. J.C. Penney Life Ins. Co.*, 861 S.W.2d 834, 836 (Tenn.Ct.App.1992) (interpreting same definition to require the application of the laws of Tennessee—the location of the insured's death).

A ready source of statutory and case law concerning the meaning of "intoxicated" arises from Iowa's prohibition of operating a motor vehicle while intoxicated. *See* Iowa Code § 321J.2 (1995). This offense can be committed in two ways: (1) operating a vehicle while under the influence of alcohol, *id.* § 321J.2(1)(a); or (2) operating a vehicle with a blood alcohol concentration of .10 or more, *id.* § 321J.2(1)(b). The estate argues that our cases interpreting the first alternative should supply the definition of "intoxicated," whereas the insurer contends that "intoxicated" is appropriately defined by the legal limit specified in the second alternative.

We reject the insurer's argument that "intoxicated" is the equivalent of having a blood alcohol content of .10 or more. Section 321J.2(1)(b) does not purport to *define* the term "intoxicated"; it merely sets forth an alternate way in which a person can commit the offense of operating a motor vehicle while intoxicated. We think the first alternative, operating a vehicle while under the influence of alcohol, is more appropriately used here. The term "under the influence of alcohol" is synonymous with the phrase "while intoxicated." *Cf. State v. Berch*, 222 N.W.2d 741, 747 (Iowa 1974) ("the term 'under the influence of an alcoholic beverage' is synonymous with the term 'in an intoxicated condition'"); *Robinson v. Hawkeye Commercial Men's Ass'n*, 186 Iowa 759, 766, 171 N.W. 118, 120 (1919) ("under the influence of an intoxicant or narcotic" is equivalent to "intoxication"). Therefore, our cases interpreting and giving meaning to the first alternative, section 321J.2(1)(a), provide a definition of "intoxicated" under Iowa law for purposes of the insurance policy's intoxication exclusion.

■ A person is "under the influence of alcohol" and therefore intoxicated when one or more of the following are true:

(1) the person's reason or mental ability has been affected; (2) the person's judgment is impaired; (3) the person's emotions are visibly excited; and (4) the person has, to any extent, lost control of bodily actions or motions.

*In re S.C.S.*, 454 N.W.2d 810, 814 (Iowa 1990); *accord State v. Davis*, 196 N.W.2d 885, 890 (Iowa 1972); *State v. Stout*, 247 Iowa 453, 456–58, 74 N.W.2d 208, 210–11 (1956); *State ex rel. Cosson v. Baughn*, 162 Iowa 308, 310–11, 143 N.W. 1100, 1101 (1913). No particular degree of intoxication is required. *Stout*, 247 Iowa at 458, 74 N.W.2d at 210–11. As we said in *Cosson*,

"if he is under the influence of liquor so as not to be ... himself, so as to be excited from it, and not to possess that clearness of intellect and that control of himself that he otherwise would have, he is intoxicated."

*Cosson*, 162 Iowa at 311, 143 N.W. at 1101 (quoting *Elkin v. Buschner*, 16 A. 102, 104 (Pa.1888)).

Our reliance on the general definition of "intoxication" developed under the first alternative of section 321J.2(1) should not imply that the blood alcohol level of the insured is irrelevant. To the contrary, the blood alcohol level of the insured at the time of injury will undoubtedly provide important evidence on whether the insured was intoxicated. We simply hold that under the policy language at issue here intoxication is determined by focusing upon the insured's reasoning and mental abilities, judgment, emotions and physical control. Many facts are potentially relevant, only one of which is the insured's blood alcohol level.

■ B. *Existence of fact question.* We now turn to the undisputed facts of this case to analyze whether reasonable minds could differ on whether Benavides was intoxicated at the time of his death. Benavides spent the ten hours preceding his death drinking at a bar. Although he drove home without incident, he hit the garage doorway with his car, damaging both the doorway and the car. He parked at such an odd angle in the garage that a person could not open the interior door between the garage and the house.

He closed the garage door and remained seated in the car with the engine running until he was overcome by carbon monoxide fumes. These events were consistent with Benavides' routine practice of stopping at a bar after work and drinking to the point that he passed out in his car.

Although the record is silent as to Benavides' blood alcohol level *at the time of death,* autopsy results indicated "significant" alcohol consumption before death. The medical examiner concluded that alcohol intoxication contributed to Benavides' death. Finally, the record is lacking in any evidence that Benavides would have committed suicide.

Viewing these facts most favorably to the estate, we think reasonable minds would not disagree that Benavides was intoxicated when he died. He clearly had lost control of his bodily actions as demonstrated by his inability to drive into the garage without hitting the garage doorway and by his action in parking at such an angle that the interior door could not be used. One could also infer from Benavides' conduct in sitting in a closed garage with the engine running that his reasoning had been affected and his judgment impaired. He did not "possess that clearness of intellect and that control of himself that he otherwise would have" had he not been drinking significant amounts of alcohol. *See Cosson,* 162 Iowa at 311, 143 N.W. at 1101.

Although the *extent* of Benavides' impairment could possibly be subject to debate, that is not the issue. *See Furry's Adm'r v. General Accident Ins. Co.,* 80 Vt. 526, 68 A. 655, 656 (1908) (if there is any impairment from the use of alcohol, the exclusion applies: "If it be conceded that there may be a recovery notwithstanding some impairment of the faculties from the immediate effect of drink, it is difficult to see upon what theory the courts can fix the limit that shall bar recovery."). The issue is whether Benavides was impaired: It is beyond debate that he was. Therefore, we hold, as a matter of law, Benavides was intoxicated at the time of his death. *See Old Equity Life Ins. Co. v. Combs,* 437 S.W.2d 173, 175 (Ky.1969) (insured had been drinking before his death, was seen staggering, and then engaged in irrational acts leading to his death; the appellate court held

that the insurer's motion for directed verdict should have been sustained because insured was intoxicated as a matter of law); *Furry's Adm'r,* 68 A. at 656 (judgment for estate of insured reversed because insured was " 'under the influence' of liquor within the meaning of the [intoxication] exception").

## IV. *Causation Requirement.*

■ The estate claims that the insurance company must establish a causal connection between Benavides' intoxication and his death before the exclusion bars recovery under the policy. The insurer responds that the estate did not preserve this question for appellate review and even if it did, causation is not required under Benavides' policy. We agree that the estate failed to preserve error.

■ Issues must ordinarily be presented to and passed upon by the trial court before they may be raised and adjudicated on appeal. *Peters v. Burlington N. R.R.,* 492 N.W.2d 399, 401–02 (Iowa 1992). Although the estate did argue during the summary judgment proceedings in the district court that causation was required, the district judge, in ruling on the motions, did not address the causation issue. When a trial court fails to rule on an issue properly raised, the party raising the issue must file a motion asking the court for a ruling in order to preserve the issue for appeal. *State Farm Mut. Auto. Ins. Co. v. Pflibsen,* 350 N.W.2d 202, 206 (Iowa 1984); *see* Iowa R.Civ.P. 179(b). Because the estate did not request a ruling from the court on the causation question, that issue is not properly before us for decision.

## V. *Reasonable Expectations.*

■ The estate's final argument is that the intoxication exclusion is contrary to the insured's reasonable expectations of coverage under a life insurance policy. The doctrine of reasonable expectations may be relied upon to avoid an exclusion that (1) is bizarre or oppressive, (2) eviscerates a term to which the parties have explicitly agreed, or (3) eliminates the dominant purpose of the policy. *Clark–Peterson Co. v. Independent Ins. Assocs., Ltd.,* 492 N.W.2d 675, 677 (Iowa 1992).

However, this doctrine is not applicable unless the insured proves circumstances attributable to the insurer that fostered coverage expectations, or the policy is such that an ordinary layperson would misunderstand its coverage. *Id.*

The estate introduced no evidence that the insurance company did anything that led Benavides to think coverage would be extended under the circumstances of this case. Nor do we think the average layperson would misunderstand the meaning of the intoxication exclusion, particularly because the term "intoxication" is defined by state law. Indeed, in this era of increased publicity and notoriety of laws against driving while intoxicated, the ordinary layperson would recognize the scope of this exclusion. Because the prerequisites for application of the reasonable expectations doctrine are not present here, that doctrine cannot be used to avoid the consequences of the intoxication exclusion.

VI. *Summary.*

Under the undisputed facts and our case law defining "intoxicated," we hold that Martin Benavides was intoxicated as a matter of law. Because he died while intoxicated, we conclude the policy's intoxication exclusion precludes recovery. This court, however, does not decide whether it was necessary for the insurer to prove a causal connection between Benavides' death and his intoxication; that issue was not preserved for appellate review. Finally, the intoxication exclusion did not violate the insured's reasonable expectations. Therefore, we affirm the district court's grant of summary judgment to J.C. Penney Life Insurance Company.

**AFFIRMED.**