LEMARS MUTUAL INSURANCE
COMPANY, Appellee,

v.

John H. JOFFER and Ruth
Joffer, Appellants.

No. 96–1516.

Supreme Court of Iowa.

Jan. 21, 1998.

David J. King of the Blake Law Office, Sioux Falls, SD, for appellants.

Timothy A. Clausen of Klass, Stoos, Stoik, Mugan, Villone & Phillips, L.L.P., Sioux City, for appellee.

Considered by HARRIS, P.J., and LARSON, CARTER, LAVORATO, and SNELL, JJ.

SNELL, Justice.

Defendants appeal the district court's order denying their motion for summary judgment and granting plaintiff's motion for summary judgment regarding uninsured motorist coverage under insurance policies purchased by defendants from plaintiff. We affirm.

## I. Background Facts and Proceedings

On October 16, 1993, defendants John and Ruth Joffer were involved in a two-car accident in South Dakota while driving their 1986 Buick LeSabre. The driver of the other car involved was determined to be at fault, but the driver did not have automobile insurance. At the time of the accident, the Joffers were insured under two separate policies with plaintiff LeMars Mutual. One policy, which covered their personal vehicles, including the Buick, provided uninsured motorist coverage with a limit of $25,000 per person and $50,000 per accident. The other policy, a business automobile policy which covered a 1975 International two-ton truck, also provided uninsured motorist coverage with a limit of $500,000.

At the time of the accident, the Joffers were conducting farm business—obtaining supplies for the fall harvest—but were unable to drive the International truck because it was inoperable. Thus, they drove their Buick that day. LeMars paid the Joffers the limits of the uninsured motorist coverage pursuant to the personal automobile policy. The Joffers also sought uninsured motorist coverage under the business policy. LeMars tentatively denied coverage and filed a petition for declaratory judgment requesting the court to rule that the business automobile policy did not provide coverage to the Joffers for the injuries stemming from the October 1993 accident. LeMars subsequently filed a motion for summary judgment requesting the court to find as a matter of law that the policy did not provide coverage for the Joffers. The Joffers resisted the motion and filed their own motion for summary judgment, arguing that coverage existed under the business policy.

The district court granted LeMars' motion for summary judgment, finding that an owned-but-not-insured exclusion contained in the business automobile policy was valid and prevented coverage for an accident in the Buick, which was not insured under the business policy. The court rejected the Joffers' contention that the policy's "temporary sub-

stitute" clause provided them with coverage. On appeal, the Joffers argue that the district court erred as follows: (1) in interpreting the temporary substitute clause as not applicable to them; (2) in finding that the owned-but-not-insured exclusion applied because application of the exclusion would invalidate the temporary substitute vehicle clause, an inconsistent result rendering the coverage illusory; and (3) in declining to find that the doctrine of reasonable expectations required the court to invalidate the owned-but-not-insured exclusion.

## II.  Scope and Standard of Review

Our review from a district court's ruling on a motion for summary judgment is for errors at law. Summary judgment is appropriate only when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Iowa R. Civ. P. 237(c); *C–Thru Container Corp. v. Midland Mfg. Co.*, 533 N.W.2d 542, 544 (Iowa 1995). In determining whether a genuine issue of fact exists, we consider the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Iowa R. Civ. P. 237(c). To decide if the moving party has met this burden, we review the record in the light most favorable to the nonmoving party, in this case the defendants. *C–Thru Container*, 533 N.W.2d at 544.

## III.  Applicable Policy Provisions and Law

The uninsured and underinsured motorist coverage portion of the business policy provides as follows:

### B.  WHO IS AN INSURED

1.  You.
2.  If you are an individual, any "family member".
3.  Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, loss or destruction.
4.  Anyone for damages he is entitled to recover because of "bodily injury" sustained by another "insured".

### C.  EXCLUSIONS

This insurance does not apply to any of the following:

. . . .

4.  "Bodily injury" sustained by you while "occupying" or struck by any vehicle owned by you which is not a covered "auto".

The Joffers argue that via the temporary substitute clause found in paragraph B(3), they were covered under the business policy at the time of the accident, even though they were driving the Buick, arguably not a covered auto. LeMars contends that by the clear language of the policy, the temporary substitute clause does not apply to the Joffers, but rather applies to "anyone else" (other than the Joffers) driving a covered auto or a temporary substitute for a covered auto. Moreover, LeMars argues that the owned-but-not-insured exclusion found in C(4) clearly excludes the Joffers from coverage because they were driving the Buick at the time of accident, which they owned but which was not a covered auto under the policy. In response, the Joffers argue that the owned-but-not-insured exclusion renders the temporary substitute coverage illusory and that the doctrine of reasonable expectations supports a finding of coverage under the terms of the policy.

The primary issues on appeal require us to interpret and construe several provisions of the business automobile policy issued to the Joffers by LeMars Mutual. Our rules of contract interpretation and construction peculiar to insurance policies apply. *Ferguson v. Allied Mut. Ins. Co.*, 512 N.W.2d 296, 298 (Iowa 1994). Interpretation and construction "are technically distinct exercises with regard to resolving insurance contract problems." *Id.* at 299 (citing *Connie's Constr. Co. v. Fireman's Fund Ins. Co.*, 227 N.W.2d 207, 210 (Iowa 1975)). Interpretation requires a court to determine the meaning of contractual words. *Id.* This is a question of law for the court unless the meaning of the language depends on extrinsic evidence or a choice among reasonable inferences to be drawn. *Id.; see also A.Y. McDonald Indus., Inc. v. Insurance Co. of N.*

*Am.,* 475 N.W.2d 607, 618 (Iowa 1991). Construction of an insurance policy requires the court to determine its legal effect. *Ferguson,* 512 N.W.2d at 299. The proper construction of an insurance contract is always an issue of law for the court. *Id.*

The cardinal principle in the construction and interpretation of insurance policies is that the intent of the parties at the time the policy was sold must control. *Id.*; *A.Y. McDonald,* 475 N.W.2d at 618. Except in cases of ambiguity, the intent of the parties is determined by the language of the policy. *A.Y. McDonald,* 475 N.W.2d at 618 (citing *Cairns v. Grinnell Mut. Reins. Co.,* 398 N.W.2d 821, 823 (Iowa 1987); Iowa R.App. P. 14(f)(14)). "An ambiguity exists if, after the application of pertinent rules of interpretation to the policy, a genuine uncertainty results as to which one of two or more meanings is the proper one." *Id.* Because of the adhesive nature of insurance policies, their provisions are construed in the light most favorable to the insured. *Ferguson,* 512 N.W.2d at 299; *A.Y. McDonald,* 475 N.W.2d at 619. Exclusions from coverage are construed strictly against the insurer. *Ferguson,* 512 N.W.2d at 299.

We are mindful of the above-stated rules of interpretation and construction as we determine the issues before us.

## IV. Temporary Substitute Clause

The temporary substitute clause is found in the portion of the policy defining who is an insured for purposes of uninsured and underinsured motorist coverage. The Joffers are clearly insureds under paragraphs B(1) and B(2). The Joffers contend they are also insureds under paragraph B(3) and therefore the temporary substitute clause applies to them. Paragraph B(3) extends uninsured and underinsured coverage to "anyone else 'occupying' a covered 'auto' or a temporary substitute for a covered 'auto'." The term "anyone else" is not defined in the policy. The insurer and insureds offer different meanings for the term. LeMars contends the term "anyone else" is intended to exclude those categories of insureds previously described, while the Joffers argue that "anyone else" is intended to

be inclusive, making the temporary substitute clause applicable to all categories of insureds previously named.

When words or phrases are undefined in a policy we do not give them a technical or legal meaning. Rather, undefined words are given their ordinary meaning. If the words are susceptible to two reasonable interpretations, the interpretation favoring the insured is adopted. However, a mere disagreement between the parties regarding the meaning of undefined terms does not automatically establish an ambiguity. *A.Y. McDonald,* 475 N.W.2d at 619. In determining the ordinary meaning of undefined terms in a policy, we commonly refer to dictionaries. *See, e.g., id.* at 619–20 (meaning of "damages"); *Witcraft v. Sundstrand Health & Disability Group Benefit Plan,* 420 N.W.2d 785, 788 (Iowa 1988) (meaning of "illness"); *North Star Mut. Ins. Co. v. Holty,* 402 N.W.2d 452, 455 (Iowa 1987) (meaning of "apparatus").

As noted previously, the interpretation of insurance policy terms is a matter of law for the court unless extrinsic evidence exists as to the meaning of the terms. *Ferguson,* 512 N.W.2d at 299. The Joffers contend that representations made by their insurance agent constitute extrinsic evidence and should be considered by the court in determining the meaning of the contested terms. The Joffers note that when questioning their agent about their automobile coverage, she always stated they were "fully covered." We find that such a generic statement, considered alone, is insufficient to raise a question of fact with regard to the parties' intent as to the terms at issue which would render summary judgment inappropriate in this instance.

The district court examined a standard dictionary in determining the meaning of the term "anyone else." The court found the meaning of "anyone" to be "any person at all." It found "else" to be an adjective defined as "being different in identity." The district court concluded that the "qualifying language in paragraph B(3), 'anyone else,' indicates that paragraph B(3) applies only to any person at all who is different in identity

from those already listed." Thus, the district court found that the Joffers were not included within that meaning because they were considered insureds under paragraphs B(1) and B(2).

The Joffers argue that the district court erred in its interpretation of the term "anyone else." They contend that because more than one meaning for the term "anyone else" exists, the meaning most favorable to the insured must be used. The Joffers posit that an alternative definition of "else" is the more favorable interpretation and urge us to adopt that definition. The alternative definition for "else" offered by the Joffers is: "In addition; additional; more. *'Would you like anything else?'* " The Joffers argue that under this definition, the temporary substitute clause applies to the preceding classes of insureds as well.

While our prior case law does require us to utilize the meaning most favorable to the insured, we also note that this rule of interpretation applies only when the language is susceptible to two different meanings. As we have previously stated, "a mere disagreement on the part of the parties as to the meaning of terms does not automatically establish an ambiguity." *A.Y. McDonald,* 475 N.W.2d at 619. We must ask objectively: Is the language fairly susceptible to two interpretations? *Id.* In this case, we find that it is not. Utilizing the definition of "else" proposed by the Joffers—additional or more—requires a strained reading of the policy and a strained usage of the English language. Had LeMars intended for the temporary substitute clause to apply to the Joffers it had several options: it could have left out the word "else," making the temporary substitute clause applicable to anyone; included the clause in every paragraph; or separated the paragraphs by commas, indicating that the clause should apply to each paragraph. The terms "anyone" and "else" must be read together and in the context of the policy to ascertain the correct meaning. The district court appropriately applied the dictionary meaning consistent with ordinary speech in finding that the temporary substitute clause did not apply to the Joffers. We conclude, as did the district court, that the term "anyone

else," as used in this insurance policy, was intended to mean anyone not previously named and thus did not include the Joffers. Therefore, we conclude that the temporary substitute clause is not applicable to the Joffers.

## V.   Owned–But–Not–Insured Exclusion

██ The owned-but-not-insured exclusion is set forth in the exclusions section of the uninsured and underinsured motorist portion of the business policy and states that no coverage is provided for: "Bodily injury" sustained by you while "occupying" or struck by any vehicle owned by you which is not a covered "auto." The only automobile specified in the business policy as a covered auto was the 1975 International truck. On the date of the accident, the Joffers were driving their Buick LeSabre, a car covered under their personal policy. Therefore, it appears that the exclusion prohibits coverage because the Joffers were not driving a vehicle covered under the business policy at the time the accident took place. The Joffers argue that this exclusion is invalid for two reasons. First, they argue that this clause renders the temporary substitute clause illusory and second, that the reasonable expectations doctrine should apply and provide coverage. LeMars argues that the owned-but-not-insured exclusion is a valid exclusion and should be upheld in this instance.

This type of exclusion has been the subject of substantial litigation in Iowa. In all cases but one, our court has upheld the validity of owned-but-not-insured exclusions. Important to the analysis of this exclusion is Iowa Code chapter 516A (1993), regarding uninsured and underinsured motorist coverage. Section 516A.1 provides that no automobile or motor vehicle liability insurance policy may be issued in Iowa unless uninsured, underinsured and hit-and-run coverage is included in the policy. However, the insured may reject any or all of such coverage by a signed written rejection. Section 516A.2 provides in part: "Such forms of coverage [uninsured, underinsured, hit-and-run] may include terms, exclusions, limitations, conditions, and offsets which are designed to avoid duplication of insurance or other benefits."

We recognize that section 516A.2 "forms a basic part of the policy and is treated as if it had actually been written into the policy." *Gentry v. Wise*, 537 N.W.2d 732, 735 (Iowa 1995) (citing *Tri–State Ins. Co. v. De Gooyer*, 379 N.W.2d 16, 17 (Iowa 1985)). Our court has previously upheld owned-but-not-insured exclusions on the basis of section 516A.2, finding that such exclusions are designed to avoid duplication of insurance or other benefits. *See, e.g., Kluiter v. State Farm Mut. Auto. Ins. Co.*, 417 N.W.2d 74, 76 (Iowa 1987).

In *Lindahl v. Howe*, 345 N.W.2d 548 (Iowa 1984), we struck down an owned-but-not-insured exclusion with regard to uninsured motorist coverage. Lindahl was injured in a collision with an uninsured driver while operating his motorcycle. Lindahl had an automobile policy with State Farm on another vehicle which provided uninsured motorist coverage and also contained an owned-but-not-insured exclusion. The motorcycle was not a covered vehicle under this policy, but Lindahl sought coverage anyway. State Farm denied coverage based on the exclusion. *Lindahl*, 345 N.W.2d at 549. We found that the exclusion violated the mandatory statutory coverage requirement found in section 516A.1. We noted that other courts which had considered the issue interpreted similar statutes "as requiring minimum protection of persons to the same extent as if the uninsured tortfeasor had liability coverage in the amounts specified in financial responsibility laws." *Id.* at 550. We found that section 516A.2 did not validate the exclusion in this instance because "[w]hatever insurance or benefits the exclusion is designed to avoid duplicating are not named in the policy, and none are shown to exist in this case." *Id.* at 551. We expressed the belief that the "legislature intended only to authorize insurers to exclude coverage for contingencies in which duplication actually occurs." *Id.*

In *Kluiter*, we again considered the effect of an owned-but-not-insured exclusion in light of Iowa Code section 516A.2, this time with regard to underinsured coverage. The Kluiters were injured by an underinsured motorist while riding their motorcycle. After

settling with the other motorist's insurance carrier, and the carrier of their motorcycle liability policy for underinsured coverage, they presented a claim against State Farm for additional underinsured coverage under separate policies covering three other vehicles they owned, but not the motorcycle. State Farm denied coverage based on an owned-but-not-insured exclusion. *Kluiter*, 417 N.W.2d at 74. The Kluiters conceded that based on the exclusion they were not entitled to recover from State Farm; however, they argued that the exclusion violated the public policy expressed in chapter 516A and therefore should not be enforced. State Farm contended the exclusion was authorized by the language of section 516A.2. *Id.* at 76.

We concluded that the owned-but-not-insured exclusion was "of the type authorized by section 516A.2" and thus affirmed the district court decision upholding its validity. We found the potential for duplication existed and that the exclusion was properly aimed at preventing such duplication. We noted that

> the exclusion prevents an insured from recovering benefits under a particular policy when he is injured while occupying a vehicle he owns, but has chosen not to insure under that policy. The exclusion clearly prevents an insured from being able to recover under more than one underinsured motorist provision.

*Id.* We noted that the public policy of chapter 516A did not require an insured to receive duplicate underinsurance coverage. *Id.* We distinguished our decision in *Lindahl* on the ground that the insured in that case would have been left with no coverage had the exclusion been upheld. *Id.* at 76–77.

We bolstered our decision in *Kluiter* by later decisions upholding the validity of owned-but-not-insured exclusions in underinsured motorist coverage. *See, e.g., Ciha v. Irons*, 509 N.W.2d 492 (Iowa 1993); *Dessel v. Farm & City Ins. Co.*, 494 N.W.2d 662 (Iowa 1993). These cases upheld the exclusion on the ground that enforcing it would not fully deny the insured coverage. *See Ciha*, 509 N.W.2d at 493. In *Walter v. Kinsey*, 518 N.W.2d 370 (Iowa 1994), a ten-year-old boy was riding a motorcycle with his father when they were hit by an underinsured motorist.

The boy recovered $25,000 of liability insurance from the motorist, which was inadequate to compensate him for his injuries. The father had $20,000 of underinsured motorist coverage on the motorcycle and $100,000 of underinsured coverage under a second policy on an automobile which contained an owned-but-not-insured exclusion. The motorcycle was not insured under the second policy. *Walter*, 518 N.W.2d at 371. We acknowledged that insureds have "the freedom to elect to have different policies for different vehicles" and upheld the owned-but-not-insured exclusion. *Id.* at 371–72. All of these cases reach the same conclusion: that owned-but-not-insured exclusions are valid when they comply with Iowa Code section 516A.2. In other words, the exclusion must seek to avoid duplication of insurance or other benefits in some manner. Our contrary decision in *Lindahl* was based on two reasons: first, no duplication of benefits existed and second, and perhaps more importantly, the insured would have been left without any recovery.

The Joffers argue that because *Lindahl* involved the validity of an owned-but-not-insured exclusion contained in uninsured motorist coverage, it is direct precedent here and mandates that the same exclusion be struck down in this instance. However, we find the facts presented in this case distinguishable from *Lindahl*. A duplication of benefits exists in this case which was not present in *Lindahl*. The Joffers have already recovered the limits of the uninsured motorist coverage provided in their personal policy. If they recover from LeMars under the business policy as well, they will receive duplicate benefits for one injury. Moreover, the insureds here will not be left without any recovery, which appears to have been the driving force behind our decision in *Lindahl*. The Joffers had uninsured coverage under their personal automobile policy with Le-Mars. *See* Iowa Code § 516A.1 (directing that uninsured and underinsured coverage "shall include limits for bodily injury or death at least equal to those stated in section 321A.1, subsection 10"); *see also* Iowa Code § 321A.1(10) (requiring proof of financial responsibility in the amount of $20,000 for injury or death of one person and $40,000 for injury or death to two or more persons).

Furthermore, we have previously approved different policy provisions intended to prevent the duplication of benefits in the *uninsured* motorist context. In *Gentry*, we noted that our court has "traditionally taken a narrow coverage view ... in the *uninsured* motorist coverage area." *Gentry*, 537 N.W.2d at 736. We noted such a narrow approach "is based on a policy viewpoint that the role of uninsurance coverage is to provide protection up to the minimum statutory limit which the claimant would have received had the claimant been injured by an insured motorist." *Id.* Thus, we concluded that provisions which operate "to reduce uninsured motorist coverage where other benefits are available to the insured ... [are] appropriate as long as such provisions do not operate to deny payments to an insured of less than the statutory minimum." *Id.*; *see also Davenport v. Aid Ins. Co. (Mut.)*, 334 N.W.2d 711, 715 (Iowa 1983) (validating policy provision which allowed the insurer to off-set any recovery the insured obtained from a third-party tortfeasor against its liability for uninsured motorist coverage); *Lemrick v. Grinnell Mut. Reins. Co.*, 263 N.W.2d 714, 719 (Iowa 1978) (noting that "[t]he object of § 516A.2 is to permit insurers to hold maximum recovery [of uninsured motorist benefits] to the minimum required amount"); *Westhoff v. American Interinsurance Exch.*, 250 N.W.2d 404, 409 (Iowa 1977) (upholding a provision in an uninsured motorist policy which prohibited stacking of coverage in order to prevent duplication of benefits based on the language of section 516A.2).

In *Lemrick*, we noted that the mere existence of a statute which permits provisions in uninsured motorist policies to avoid duplication of benefits does not automatically allow an insurer to refuse coverage which may result in such duplication. "An appropriate implementing paragraph in the policy is essential." *Lemrick*, 263 N.W.2d at 718; *see also Grinnell Mut. Reins. Co. v. Globe Am. Cas. Co.*, 426 N.W.2d 635, 638 (Iowa 1988). The language of the owned-but-not-insured exclusion in LeMars' policy is an "appropriate implementing paragraph." It

shows the intent of the insurer not to provide coverage for injuries which occur in vehicles which are not insured under the applicable policy.

We conclude that the owned-but-not-insured exclusion contained in the uninsured motorist policy is a valid exclusion and prevents the Joffers from recovering the higher limits available under the business policy. The potential for duplication of benefits is clear and enforcing the exclusion does not leave the insureds without coverage equal to the statutorily required minimum amount.

■ The Joffers argue that enforcing the exclusion renders the temporary substitute clause illusory. We disagree. Paragraph B(3) provides coverage in a situation which could be vitally important to a business owner. Under this paragraph, any business associate or employee utilizing either the International truck or a temporary substitute for the truck not owned by the Joffers would be covered by the policy. We also note that the owned-but-not-insured exclusion applies only to "you," meaning the named insured. This exclusion does not apply to persons covered under the temporary substitute clause, i.e. "anyone else." Thus, the exclusion does not take away any coverage provided by the temporary substitute clause because the exclusion and the clause apply to two different classes of insureds. The coverage provided under the temporary substitute clause is not rendered illusory by the owned-but-not-insured exclusion.

Furthermore, the coverage offered by the business policy dovetails with the Joffers' personal automobile policy. The two policies worked together to ensure that they were always covered by insurance, regardless of which vehicle they were driving. With regard to the discrepancy in the amount of uninsured motorist coverage between the two policies, we note that the Joffers were in control of the amount of the coverage they obtained and could have carried higher limits on their personal automobile policy. The Joffers' insurance agent testified at deposition that she encouraged the Joffers to purchase higher uninsured and underinsured motorist coverage on their personal vehicles. However, they declined to increase their cov-

erage. While the Joffers may regret not obtaining this higher coverage, we will not require LeMars to provide the higher coverage in the face of a clear, applicable exclusion.

## VI.   Reasonable Expectations Doctrine

■ The Joffers' final argument is that the owned-but-not-insured exclusion is contrary to their reasonable expectations of coverage. We have previously noted that an insured can utilize the doctrine of reasonable expectations to avoid an exclusion that "(1) is bizarre or oppressive, (2) eviscerates a term to which the parties have explicitly agreed, or (3) eliminates the dominant purpose of the policy." *Benavides v. J.C. Penney Life Ins. Co.*, 539 N.W.2d 352, 356 (Iowa 1995) (citing *Clark–Peterson Co. v. Independent Ins. Assoc.*, 492 N.W.2d 675, 677 (Iowa 1992)). However, as a prerequisite to the applicability of this doctrine, the insured must prove "circumstances attributable to the insurer that fostered coverage expectations" or show that "the policy is such that an ordinary layperson would misunderstand its coverage." *Id.* at 357.

The Joffers argue that their insurance agent's statements to the effect that they were "fully covered" constitute "circumstances that fostered coverage expectations." *See id.* We disagree. The agent's general statements regarding coverage are insufficient to foster coverage expectations such as the Joffers allege. Furthermore, the record does not support a finding that the parties specifically discussed the owned-but-not-insured exclusion which could have created any misunderstanding as to coverage by the Joffers. Nor do we think the ordinary layperson would misunderstand the meaning of the owned-but-not-insured exclusion, even when read in light of the temporary substitute clause. The exclusion is clear and unambiguous as is the temporary substitute clause. Because we find that the prerequisite for application of the reasonable expectations doctrine has not been met, the doctrine cannot be used to invalidate the owned-but-not-insured exclusion.

## VII. Summary

Based on our review of the record, the language of the policy and our applicable case law, we conclude that the temporary substitute clause is inapplicable to the Joffers, the owned-but-not-insured exclusion prohibits uninsured motorist coverage under the business policy, and that the doctrine of reasonable expectations cannot be used to invalidate the exclusion. Therefore, we affirm the district court's grant of summary judgment to LeMars Mutual.

**AFFIRMED.**