**STATE of Iowa, Appellant,**

v.

**Richard Lee PRICE, Appellee.**

No. 04–0691.

Supreme Court of Iowa.

Feb. 4, 2005.

Thomas J. Miller, Attorney General, Cris Douglass, Assistant Attorney General, and Darin J. Raymond, County Attorney, for appellant.

Scott L. Bixenman of Murphy, Collins & Bixenman, P.L.C., Le Mars, for appellee.

CADY, Justice.

We granted discretionary review of an order by the district court granting a motion in limine to exclude the results of a breathalyzer from a trial for operating while intoxicated. For the reasons that follow, we reverse the district court ruling and remand for further proceedings.

## I. Background Facts and Proceedings

On August 18, 2003, an officer of the Le Mars Police Department stopped Richard Lee Price for illegal passing. The officer suspected that Price had been drinking. He asked him to perform a preliminary breath test (PBT). The PBT showed Price had a breath alcohol concentration (BAC) of 0.107. The officer arrested Price for operating while intoxicated and transported him to the Plymouth County sheriff's office. The officer then administered a DataMaster breath test at the sheriff's office. This test took place approximately ninety minutes after the initial stop. The test showed Price had a BAC of 0.081.

Price was charged with operating while intoxicated, second offense, in violation of Iowa Code section 321J.2 (2003). The trial information alleged Price "operated a motor vehicle while under the influence of an alcoholic beverage" under section 321J.2(1)(*a*) or "while having an alcohol concentration of 0.08 or more" under section 321J.2(1)(*b*). The trial information also alleged Price had been convicted for the same offense within the past twelve years.

On October 2, 2003, Price filed a motion in limine seeking to exclude the results of the DataMaster test under Iowa Code section 321J.2(10) and Iowa Rule of Evidence 5.403. Section 321J.2(10) provides:

> In any prosecution under this section, the results of a chemical test shall not be used to prove a violation of subsection 1, paragraph "*b*" or "*c*", if the alcohol, controlled substance, or other drug concentration indicated by the chemical test minus the established margin of error inherent in the device or method used to conduct the chemical test does not equal or exceed the level prohibited by subsection 1, paragraph "*b*" or "*c*".

*Id.* § 321J.2(10). The established margin of error for the DataMaster test was 5%. Thus, Price argued the DataMaster results could not be introduced to prove a violation of section 321J.2(1)(*b*).[1] Further, Price argued that under Iowa Rule of Evidence 5.403, the State should be precluded from using the results to prove a violation of section 321J.2(1)(*a*) because

> any probative value of such evidence is substantially outweighed by the danger of confusion of the issues or misleading the jury. Specifically, the jury may be led to erroneously believe that the Defendant is or can be found guilty of the offense of operating while intoxicated simply because the results of the Data-

---

1. Price does not argue that section 321J.2(10) prohibits the admission of his breath test results to prove a violation of section 321J.2(1)(*a*). *State v. Hubka* forecloses this argument. 480 N.W.2d 867, 872 (Iowa 1992). There, we held:

   > [T]he limitation provided by section 321J.2(9) [now section 321J .2(10)] upon the use of blood alcohol test results applies

only to prosecutions for OWI based upon the operation of a motor vehicle while having a blood alcohol content of .10 [now 0.08] or more. By negative implication, the limitation does *not* apply to prosecutions for OWI based upon the operation of a motor vehicle "while under the influence."

*Id.*

Master test purportedly indicate an alcoholic concentration of .08 or more.

The district court granted Price's motion. The State then moved to amend the trial information to strike the allegation that Price operated a motor vehicle with an alcohol concentration of 0.08 or more. The State also asked the court to reconsider its ruling on Price's motion in limine if it granted the motion to amend. Price did not resist the motion to amend, and the court granted it. However, Price claimed that even if the 0.08 allegation was stricken, his DataMaster results were still inadmissible under rule 5.403. He argued that because "lay people commonly equate guilt or innocen[c]e [of operating while intoxicated] to whether one's alcohol concentration exceeds the 0.08 standard," the results "would simply confuse the jury and would not be probative as to whether Mr. Price was in fact under the influence of an alcoholic beverage."

The district court denied the motion to reconsider. It reasoned that proof of a BAC of .08 was not proof that a person was "under the influence." Consequently, it concluded the DataMaster results were not relevant under rule 1.402 when a defendant is only charged under the driving "under the influence" component of section 321J.2(1). Alternatively, the court reasoned: "Proof of violation of Section 321J.2(1)(b) in a prosecution under 321J.2(1)(a) ... constitutes proof of uncharged misconduct and is per se potentially prejudicial." Therefore, the court stated that even assuming the evidence was relevant, "the danger of unfair prejudice outweighs its probative value." The State applied for discretionary review of the district court's order, which we granted.

## II.  Standard of Review

■ "We typically review rulings on the admission of evidence for an abuse of discretion." *State v. Dullard*, 668 N.W.2d 585, 589 (Iowa 2003) (citing *State v. Jordan*, 663 N.W.2d 877, 879 (Iowa 2003)). "Recognizing that [w]ise judges may come to differing conclusions in similar situations, we give much leeway [to] trial judges who must fairly weigh probative value against probable dangers." *State v. Taylor*, 689 N.W.2d 116, 124 (Iowa 2004) (internal quotations and citation omitted).

## III.  Discussion

### A.  Relevance

■ A violation of section 321J.2 can occur by three alternative means, the first two of which are relevant to this case: (1) operating a motor vehicle "while under the influence of an alcoholic beverage or other drug or combination of such substances," Iowa Code § 321J.2(1)(a); or (2) operating a motor vehicle "while having an alcoholic concentration of 0.08 or more," *id.* § 321J.2(1)(b) (Supp.2003). However, following the amendment to the trial information, the State narrowed the charge to the "under the influence" prong of the statute. Consequently, that prong becomes the focus of our review.

■ We have held that "a person is 'under the influence' when the consumption of alcohol affects the person's reasoning or mental ability, impairs a person's judgment, visibly excites a person's emotions, or causes a person to lose control of bodily actions." *State v. Truesdell*, 679 N.W.2d 611, 616 (Iowa 2004) (citing *State v. Dominguez*, 482 N.W.2d 390, 392 (Iowa 1992)). Thus, conduct and demeanor normally become important considerations in determining whether a person is "under the influence" under the first component of the statute. Yet, the question presented in this case is whether breathalyzer results that are insufficient to establish a violation

under the legal limit component of the statute can be admitted to help establish a conviction under the "under the influence" component of the statute.

The district court reasoned that the results were not relevant because they were insufficient to prove a person was "under the influence." The district court relied upon our decision in *Benavides v. J.C. Penney Life Insurance Co.*, 539 N.W.2d 352 (Iowa 1995), where we rejected an argument by an insurer that an insured was "intoxicated" as a matter of law based upon a blood alcohol content in excess of the legal limit.

In *Benavides,* we held that a BAC in excess of the legal limit did not necessarily mean the person was "intoxicated" within the meaning of an exclusion in an insurance policy. *Id.* at 355. Instead, we found that the determination of intoxication must focus on such factors as reasoning and mental abilities, judgment, emotions, and physical control. *Id.* Yet, we made it clear that blood alcohol level was a relevant factor to consider. Indeed, we specifically cautioned:

> Our reliance on the general definition of "intoxication" developed under the first alternative of section 321J.2(1) should not imply that the blood alcohol level of an insured is irrelevant. To the contrary, the blood alcohol level of the insured at the time of injury will undoubtedly provide important evidence on whether the insured was intoxicated.

*Id.* This approach is consistent with the definition of "relevant evidence" as "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Iowa R. Evid. 5.401; *see State v. Hubka,* 480 N.W.2d 867, 872 (Iowa 1992) (finding evidence of defendant's BAC of 0.054 to be relevant to whether she was

"operating while under the influence" of alcohol at the time of the accident for which she was charged with vehicular homicide); *see also State v. Mezurashi,* 77 Haw. 94, 881 P.2d 1240, 1244 (1994) (holding intoxilyzer test results in a prosecution for driving under the influence were "competent evidence, which the trier of fact may consider in the context of other evidence"); *State v. Kimball,* 361 N.W.2d 601, 603 (N.D.1985) (concluding 0.11 BAC was relevant to prove defendant operated a vehicle while under the influence of alcohol); *State v. Comstock,* 145 Vt. 503, 494 A.2d 135, 138 (1985) (finding breath test results "logically relevant to establish that defendant was under the influence of intoxicating liquor").

Clearly, a BAC showing some level of alcohol in the blood makes it *more probable* that a person was under the influence of alcohol than without the evidence. *See* Iowa R. Evid. 5.401. BAC is a factor to consider together with all other evidence relating to actions and demeanor. Thus, it is relevant evidence, and the district court erred in this case by excluding the BAC test results under rule 5.402. Accordingly, we turn to consider whether the district court properly excluded the test results under rule 5.403.

### B. Rule 5.403

██ Relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Iowa R. Evid. 5.403. Analysis under rule 5.403 involves balancing the probative value of the evidence against its "undesirable characteristics." James A. Adams & Joseph P. Weeg, *Iowa Practice: Evidence* § 5.403.1, at 174 (2004) [hereinafter Adams & Weeg]. Price argues that the probative value of his DataMaster results was "minimal" both under our analysis in

*Benavides* and because "there is no witness listed in the State's trial information who can possibly testify that this particular Defendant was 'under the influence' of alcohol because of an alleged blood alcohol concentration of .081." Yet, *Benavides* did not minimize the importance of blood alcohol content in determining whether a person is "under the influence." Rather, it identified it as an appropriate factor to consider. Moreover, the test results in this case revealed the presence of some amount of alcohol in Price's body. This evidence has probative value as a factor in deciding whether Price was "under the influence."

Additionally, contrary to the finding by the district court, there was nothing to suggest that the DataMaster test results would create a danger of unfair prejudice.

> Evidence is unfairly prejudicial if it, "[a]ppeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish, or triggers other mainsprings of human action that may cause the jury to base its decision on something other than the established propositions in the case."

*State v. White*, 668 N.W.2d 850, 854 (Iowa 2003) (quoting 2 Joseph M. McLaughlin, *Weinstein's Federal Evidence* § 403.04[1][c], at 403–40 to 403–44 (2d ed.2001)). The district court concluded the test results constituted "proof of uncharged misconduct" and were thus "per se potentially prejudicial." The district court apparently misread section 321J.2(1)(*a*) and (*b*) as constituting two separate offenses. This is not the case. Rather, section 321J.1 defines one offense: operating while intoxicated, and subsections (*a*) through (*c*) set forth alternative ways of committing the offense. *Benavides*, 539 N.W.2d at 355. Thus, Price's 0.081 BAC is not "uncharged conduct." He was charged with operating while in-

toxicated, and his BAC was relevant to his guilt of that charge. In addition, his Data-Master results were not the kind of evidence that " '[a]ppeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish, or triggers other mainsprings of human action that may cause the jury to base its decision on something other than the established propositions in the case.' " *White*, 668 N.W.2d at 854 (citation omitted). Because his results were not unfairly prejudicial, their probative value could not have been substantially outweighed by the danger of unfair prejudice. *See* Iowa R. Evid. 5.403.

Price further argues that any probative value of the DataMaster results is nevertheless substantially outweighed by the danger that the jury would be misled. *See id.* "[M]isleading evidence appears to mean evidence that the jury cannot properly value." Adams & Weeg § 5.403.1, at 179. Price does not explain why the jury could not properly weigh and consider the DataMaster results as a factor, especially if they were instructed that a BAC over 0.08 did not necessarily mean he was under the influence. *See id.* at 182 ("Also considered in the balancing is the potential effectiveness of an instruction to the jury limiting consideration of certain facts to specific purposes."); *see also State v. Plaster*, 424 N.W.2d 226, 232 (Iowa 1988) ("It is only in extreme cases that [a limiting] instruction is deemed insufficient to nullify the danger of unfair prejudice." (citing *State v. Conner*, 314 N.W.2d 427, 429 (Iowa 1982))).

The test results are not inadmissible on the grounds urged by Price, and the district court erred in granting the motion. Of course, at trial, Price can argue that he was not under the influence when he was operating his vehicle. *Mezurashi*, 881 P.2d at 1244 (citation omitted). The jury can then weigh the evidence and make its

determination. There is no reason to think that, properly instructed, they would not follow the law. *See Comstock,* 494 A.2d at 138 (considering jury instructions in analyzing the defendant's unfair-prejudice challenge to the admission of his BAC in an under-the-influence prosecution).

### IV. Conclusion

Although "we give much leeway [to] trial judges who must fairly weigh probative value against probable dangers," *Taylor,* 689 N.W.2d at 124 (internal quotations and citation omitted), the district court in this case erroneously applied the law. *See State v. Sayles,* 662 N.W.2d 1, 8 (Iowa 2003) (stating that a court abuses its discretion when it erroneously applies the law) (citing *State v. Rodriquez,* 636 N.W.2d 234, 239 (Iowa 2001)). Accordingly, we reverse its ruling on Price's motion in limine and remand the case for further proceedings.

**REVERSED AND REMANDED.**