IBP, INC., Appellee,

v.

**Linda HARPOLE, Appellant.**

**Perry Manor and Allied Mutual Insurance Company, Plaintiffs,**

v.

**Iowa District Court for Polk County, Defendant.**

No. 99–0578.

Supreme Court of Iowa.

Jan. 18, 2001.

Michael L. Mock and D. Brian Scieszinski of Bradshaw, Fowler, Proctor & Fairgrave, P.C., Des Moines, for plaintiffs.

SNELL, Justice.

An injured employee, Linda Harpole sought disability benefits for injuries she suffered while employed by both IBP, Inc. and Perry Manor. Her individual claims against each business were consolidated for one agency hearing. Harpole appeals the district court's decision on judicial review which overturned her 40% permanent partial disability award against IBP. By writ, Perry Manor seeks a ruling that an individual judgment received in a consolidated case, appealed by no party, does not continue to be litigated by virtue of another consolidated party's appeal of its judgment. We reverse the judgment of the district court and remand for entry of judgment affirming the agency's ruling. We also sustain the writ.

I. Factual Background and Proceedings

Harpole was employed at IBP when her first knee injury occurred in October 1991. From this fall, she required knee surgery and thereafter, a knee brace. In May 1993, Harpole received a settlement of 20% permanent partial disability from IBP for her injury. Harpole exacerbated her injury on two more occasions while employed at IBP. One was on an icy sidewalk not connected with work in February 1993, and the other occurred in the IBP cafeteria in May 1993. Also, in April 1994, Harpole left work at IBP as a result of severe pain in her left knee. Harpole filed claims against IBP for the subsequent work-related fall and her pain-related work leave.

Harpole eventually left the employ of IBP and began work at Perry Manor. In 1996, she again injured her left knee while at work. She filed a disability claim against Perry Manor for this injury. Harpole also petitioned to re-open the settlement she had made with IBP for her first knee injury in 1991. Harpole claimed she now had additional injuries to both knees, her lower back, and hips tracing back to her initial 1991 fall. A description of her injuries is provided below.

1) October 11, 1991—The first injury to Harpole's left knee occurred at IBP. Harpole was unable to return to her regular duties until February 5, 1993. She obtained a settlement award from IBP for this injury in May 1993.

2) December 1991—Harpole underwent arthroscopic surgery by Dr. David Wirtz on her left knee.

3) April 1992—Harpole received patellar realignment and Dr. Wirtz removed a screw from her left knee.

4) December 1992—Dr. Wirtz removed Harpole's left patella. Dr. Wirtz also prescribed that Harpole wear a leg immobilizer on her left leg at home and at work. The immobilizer did not allow her to bend her left leg.

5) February 15, 1993—Harpole slipped and fell outside a private business, re-injuring her left knee. She was wearing her immobilizer on her left knee at this time. She was unable to return to work until April 13, 1993.

6) February 1993—Because Dr. Wirtz was out of town, Dr. Sinesio Misol performed left knee surgery on Harpole to repair a torn tendon due to her slip and fall.

7) May 20, 1993—Harpole slipped and fell in the IBP cafeteria. X-rays did not show any new injury. However, Harpole did suffer increased pain. She was unable to return to work until August 20, 1993.

8) April 31, 1994—Harpole left work because of extreme knee pain. No new injury occurred at this time. She was off work until June 15, 1994.

9) August 1994—Harpole began working at Perry Manor.

10) September 1, 1994—Harpole injured her left knee again while working at Perry Manor. She returned to work on September 6, 1994, only to leave on September 11, 1994 with severe swelling. She has never returned to work after that day.

11) September 1994—Harpole again underwent knee surgery, this time by orthopedic surgeon, Dr. David Tearse to repair scar tissue in her left knee.

12) December 1995—Harpole developed right knee pain.

13) June 1996—Harpole developed lower back and hip pain and was treated by her family physician, Dr. John Beattie, and neurosurgeon, Dr. Douglas Koontz.

In summary, by 1996, Harpole had four individual claims pending before the industrial board: two disability claims against IBP for her 1993 cafeteria fall and 1994 pain-related work leave; one disability claim against Perry Manor for her 1994 knee injury; and one petition to re-open the settlement she made with IBP for her 1991 injury. These claims were consolidated for hearing before the deputy industrial commissioner.

A. The Initial Ruling by the Deputy Industrial Commissioner

The deputy commissioner ordered IBP to pay permanent total disability to Harpole for her 1991 injury, instead of the previously agreed upon partial disability. IBP was also required to pay various healing period benefits for her cafeteria fall and pain-related work leave. Perry Manor was assessed one day of temporary total disability benefits to be paid in addition to the emergency room medical expenses Harpole incurred as a result of her fourth knee injury at Perry Manor.

B. The Ruling on Appeal to the Industrial Commissioner

IBP appealed the deputy's ruling to the industrial commissioner who affirmed in every area except for the assessment of permanent total disability. The commissioner reduced that award to 40% permanent partial disability or 200 weeks of disability. On this appeal, Perry Manor argued the commissioner had no authority to review the deputy's decision against Perry Manor because neither it nor Harpole appealed. The commissioner assumed authority and affirmed in full the deputy's award against Perry Manor.

C. The Ruling on Judicial Review to the District Court

IBP appealed to the district court. Harpole filed her own cross-appeal. Perry Manor did not appeal nor did any party question the validity of the judgment against Perry Manor. The district court reversed the award against IBP in its entirety. IBP was required to pay no additional disability to Harpole. The district court then remanded the case back to the industrial commissioner for a re-examination of Perry Manor's liability in conjunction with its assessed disability payments. Harpole appeals this decision. Perry Manor petitioned our court for a writ of certiorari. We granted this petition and now hear both arguments.

II. Scope and Standard of Review

A. Writ of Certiorari

This court restricts review of a decision on writ of certiorari for correction of errors at law. *Halverson v. Iowa Dist. Ct.*, 532 N.W.2d 794, 797 (Iowa 1995). "A petition for a writ of certiorari is proper when the district court is alleged to have exceeded its jurisdiction or to have acted illegally." *State Pub. Defender v. Iowa Dist. Ct.*, 594 N.W.2d 34, 36 (Iowa 1999). We will sustain the writ when the trial court has exceeded its authority. *Iowa Dep't of Transp. v. Iowa Dist. Ct.*, 588 N.W.2d 102, 103 (Iowa 1998). If we decide that Perry Manor was not a party to the district court decision because no specific appeal had been taken, it is authorized to

seek review by writ. *Shannon by Shannon v. Hansen,* 469 N.W.2d 412, 414 (Iowa 1991). However, if we find the district court had authority and Perry Manor was a party in the district court suit, we will treat Perry Manor's case as a direct appeal. Iowa R.App. P. 304 ("If any case is brought by appeal, certiorari, or discretionary review, and the appellate court is of the opinion that another of these remedies was the proper one, the case shall not be dismissed, but shall proceed as though the proper form of review had been sought.").

### B. Direct Appeal

■ Statutory law dictates how we review appeals from administrative actions. Iowa Code § 17A.19(8) (1999). "On review of agency actions, this court functions solely in an appellate capacity to correct errors of law on the part of the agency." *Ahrendsen ex rel. Ahrendsen v. Iowa Dep't of Human Servs.,* 613 N.W.2d 674, 676 (Iowa 2000) (citing *Glowacki v. State Bd. of Med. Exam'rs,* 516 N.W.2d 881, 884 (Iowa 1994)).

■ The subsequent appeal of the district court's review of the agency decision "is limited to determining whether the district court correctly applied the law in exercising its section 17A.19(8) judicial review function." *Id.* However, the district court, as well as this court, is "bound by the commissioner's factual findings if they are supported by substantial evidence in the record." *Bergen v. Iowa Veterans Home,* 577 N.W.2d 629, 630 (Iowa 1998). The district court may reverse the agency finding if it is not supported by substantial evidence. Iowa Code § 17A.19(10)(f). Upon our review of the district court's reversal, "we apply the standards of section 17A.19(8) to the agency action to determine whether our conclusions are the same as those of the district court." *IBP, Inc. v. Al-Gharib,* 604 N.W.2d 621, 627 (Iowa 2000). We will affirm if the district court satisfied its standard of review.

### III. Issues on Appeal

### A. Writ of Certiorari

We are asked to consider whether the district court acquires authority to review awards against an employer in a consolidated disability claim when petitioned for judicial review by only one of the two employers, and the claimant does not seek review. This is an issue of first impression before this court.

It is clear that neither Perry Manor nor Harpole appealed the decision made by the deputy commissioner ordering Perry Manor to pay certain disability benefits. Because Harpole's case against Perry Manor was consolidated with Harpole's case against IBP, when IBP appealed, the reviewing industrial commissioner passed judgment on both awards even though no party argued the Perry Manor judgment was in error. The commissioner agreed that the Perry Manor judgment was proper and did not address any obstacles it may have hurdled to make such a finding.

Although not a captioned party, Perry Manor filed a brief in the district court proceeding and re-asserted its belief that its judgment should not be reviewed because no party was contesting it. The district court recognized that "Perry Manor [was] not named in the appeal or cross-appeal." Nevertheless, the district court considered the Perry Manor judgment and ordered the Perry Manor case back to the commissioner for re-evaluation.

We have addressed a similar question in *Sioux City Brick & Tile Co. v. Employment Appeal Board,* 449 N.W.2d 634 (Iowa 1989). Five different employees filed separate agency disability actions against the same employer. *Sioux City Brick,* 449 N.W.2d at 636. These cases were consolidated at the time of hearing. Prior to consolidation, the cases had proceeded independently. *See id.* at 638. Following a favorable verdict for each employee, the employer sought judicial review with the district court in the applicable time period, naming only one party. After the time for

petitioning for judicial review had expired, the employer sought to amend the petition to include the other four claims. These four employees then argued that, although consolidated, each claim was still separate, and review should have been taken in a timely matter for each individually. Conversely, the employer argued that consolidation of the claims created only one claim. As such, its petition for one included review of all. The district court allowed the employer to amend the petition to include the other four claims.

On review, our court stated: "At the outset, we reject the employer's contention that this case involves review of only one, and not five, agency actions." *Id.* We were persuaded that each claim was filed separately, each was for a different amount, and each was assigned a separate hearing number. We found that "the claimants [were] not coparties to a single agency action; their contested cases [were] similar, but at the same time, separate." *Id.* Accordingly, "the district court exceeded its authority by granting the employer leave to amend its petition...." *Id.* at 639.

> The courts of our state cannot expand their judicial review jurisdiction by allowing appeal of agency action in contested cases beyond the time limit specified for that purpose by the legislature. If a party's failure to timely appeal agency action in one case could be cured merely by amendment of a timely petition for judicial review of agency action in another case—*even though the cases turn on similar facts*—then the jurisdictional time limits prescribed by the legislature would be rendered meaningless.

*Id.* at 638 (emphasis added).

We further recognized:

> This case illustrates the distinction between "lack of subject matter jurisdiction" and "lack of authority to hear a particular case".... The district court has subject matter jurisdiction over appeals from agency action, but because that subject matter jurisdiction was not

properly invoked by timely petition ..., the court lacks authority to exercise its jurisdiction over those cases.

*Id.* at 639 n.6. In the present case, Perry Manor was never named in the pleadings of the intra-agency appeal or the petition for judicial review to the district court, nor was the validity of this judgment challenged in any way. Although Perry Manor does not make this argument, we note that no timely petition including Perry Manor's judgment was received by the district court. We are persuaded that this is analogous to the above case.

Obviously, the circumstances of consolidation vary in our set of facts from those in *Sioux City Brick*. Harpole filed four claims against two different employers. Only one claim dealt with Perry Manor. The other three exclusively applied to IBP. But similar to *Sioux City Brick*, the present claims were only consolidated for hearing purposes. All prehearing procedures such as the pleadings, answers, discovery, and most depositions were conducted separately. Each claim was assigned a different hearing number and pertained to different injuries. This was also the case in *Sioux City Brick*. While the initial ruling by the deputy commissioner, and later the commissioner, included both the IBP judgment and the Perry Manor judgment, the ruling divided its holding into two parts and did not commingle its findings between the two. It is true that the employees in *Sioux City Brick* each received separate rulings, however, these were, for the most part, verbatim copies of the same ruling. *See id.* at 638.

In a more recent decision, we adopted the federal court's view of the effect of consolidation. *Miller v. Lauridsen Foods, Inc.*, 525 N.W.2d 417, 419–20 (Iowa 1994) (citing *Cole v. Schenley Indus., Inc.*, 563 F.2d 35, 38 (2d Cir.1977)). We stated: "Although cases may be consolidated for trial, the cases generally preserve their separate identity." *Id.* at 420. Because consolidation is a mere procedural device

used to promote judicial economy, "consolidation cannot effect a merger of the actions or the defenses of the separate parties." *Cole,* 563 F.2d at 38; *see also* 46 Am.Jur.2d *Judgments* § 63, at 420 (1994) ("The theory behind this position is that except for the consolidation of the cases for convenience of pretrial and trial procedure the cases maintain their separate identities throughout the litigation....").

We recognize that Harpole could have challenged both judgments in a single petition if she had specifically named both employers. *See First Nat'l Bank v. Louisiana Tax Comm'n,* 289 U.S. 60, 62, 53 S.Ct. 511, 512, 77 L.Ed. 1030, 1033 (1933). However, her appeal was limited to the commissioner's judgment against IBP. The crucial distinction to the *First National* rule is that the Perry Manor judgment was never challenged by either IBP or Harpole, nor included in their respective petitions for judicial review. Moreover, an exception to the general rule espoused in *First National* applies:

> [A] court may construe a single notice of appeal to encompass two consolidated cases, even though the cases have not completely merged and technically require separate notices of appeal, if the appellant's intent to appeal both cases is apparent and there is no prejudice to the adverse parties. *However,* where the appellant notices the appeal of a specified judgment only, or a part thereof, rather than simply appealing from the entire judgment, only the specified issues may be raised on appeal. Under such circumstances, the court has no jurisdiction to review other judgments or issues which are not expressly referred to and which are not impliedly intended for appeal, because the intent to appeal is not apparent and because prejudice to the adverse party is likely to result if review is granted. Prejudice to the adverse party is especially likely to result where parts of a judgment are truly independent, as there is more likelihood that the designation of a specified judgment, or part thereof, in the notice of appeal will be construed as an intent to leave the unmentioned portions undisturbed. Similarly, where the appellant files a single notice of appeal from the second of two consolidated cases and where it is clear from the record that the appellant abandoned the claims in the initial consolidated case, *the court may not construe the single notice of appeal to encompass both consolidated cases.*

5 Am.Jur.2d *Appellate Review* § 335, at 106–07 (1995) (emphasis added).

IBP did not name Perry Manor as a party in its intra-agency appeal and neither IBP nor Harpole named Perry Manor in their petitions for judicial review. It is clear that Harpole abandoned any challenge of the Perry Manor award because she never argued it was wrong or improper in any subsequent forum. Similarly, IBP's appeal had nothing to do with Perry Manor's award. IBP did not argue Perry Manor should share some of the cost or that it was paying for a benefit rightfully charged to Perry Manor.

■ To treat the petition for judicial review as a challenge of the Perry Manor judgment imposes an extreme undue burden on Perry Manor because (1) Perry Manor agreed it owed the amount of judgment; (2) Harpole never argued Perry Manor should pay more; (3) The remand by the district court required Perry Manor to relitigate a judgment no party ever questioned; and (4) The sheer expense of litigation to Perry Manor looms large given that it is forced to spend money asking the court to *affirm* the judgment against it. Moreover, if Perry Manor's case had never been consolidated with IBP's, and Perry Manor had a judgment levied against it, when no appeal was taken, the decision would be final. For these reasons, we agree that consolidation does not have the effect of a complete merger into one indivisible case in these circumstances. The district court had no authority to hear

the agency's decision regarding Perry Manor. Therefore, we sustain the writ.

### B. Direct Appeal

On direct appeal we are asked to determine whether the district court's decision to revoke all disability benefits ordered against IBP was proper. Specifically, we consider whether the commissioner's decision was supported by substantial causal evidence such that the district court erred in reversing it. Iowa Code section 17A.19 controls how the district court should review the agency decision. We will affirm the district court if the agency's decision was:

f. Based upon a determination of fact clearly vested by a provision of law in the discretion of the agency that is not supported by substantial evidence in the record before the court when that record is viewed as a whole. For purposes of this paragraph, the following terms have the following meanings:

(1) "Substantial evidence" means the quantity and quality of evidence that would be deemed sufficient by a neutral, detached, and reasonable person, to establish the fact at issue when the consequences resulting from the establishment of that fact are understood to be serious and of great importance.

. . . .

(3) "When that record is viewed as a whole" means that the adequacy of the evidence in the record before the court to support a particular finding of fact must be judged in light of all the relevant evidence in the record cited by any party that detracts from that finding as well as all of the relevant evidence in the record cited by any party that supports it, including any determinations of veracity by the presiding officer who personally observed the demeanor of the witnesses and the agency's explanation of why the relevant evidence in the record supports its material findings of fact.

Iowa Code § 17A.19(10)(f)(1), (3).

The district court was persuaded that there was not substantial evidence to re-

open the previous settlement between IBP and Harpole. The court found no substantial evidence to support an award for permanent partial disability because of the testimony concerning the effect the non-work-related fall had on Harpole's injury and ability to work. The district court felt the record did not adequately reflect causation. The relevant discussion and conclusion is provided below:

While Harpole's right lower extremity and back condition may have been aggravated by limitations in the function of Harpole's left knee, Dr. Wirtz specifically concluded that Harpole would have recovered from the [initial knee injury] and patellectomy with **"no alteration of function."**

. . . However, following the [non-work-related] slip and fall injury, Dr. Wirtz noted that Harpole had functional restrictions. The only rational conclusion that can be reached is that it was the restriction in function following the slip and fall injury that led to the development of Harpole's right leg and back conditions, not the IBP injury for which there was no alteration of function.

. . . In light of Harpole's subsequent injuries, and expert medical testimony in the record there is not substantial evidence for the Commissioner to conclude that Harpole proved by a preponderance of the evidence that the [first knee injury] at IBP was a proximate cause of Harpole's whole body industrial disability.

. . . .

It was Harpole's burden to prove by a preponderance of the evidence that the alleged injury is a proximate cause of the disability upon which the claim is based. The same is true with regard to the healing period and medicals. For reasons stated above, Harpole has simply not met this burden.

It is clear the district court gave the most weight to the testimony of Dr. Wirtz and

determined the other contrary medical testimony was insufficient to provide causation to the "neutral, detached, and reasonable person." *See id.* § 17A.19(10)(f)(1).

On appeal, Harpole argues that the commissioner's decision should be upheld. Harpole takes issue with the district court's decision because she feels it impermissibly relied on its own findings of fact, replacing those found by the commissioner. Harpole is correct that "judgment calls are to be left to the agency." *Burns v. Bd. of Nursing*, 495 N.W.2d 698, 699 (Iowa 1993); *see also Oscar Mayer Foods Corp. v. Tasler*, 483 N.W.2d 824, 829 (Iowa 1992) ("[J]udgment calls are [the] province of administrative tribunal, not the court's." (citing *Mercy Health Ctr. v. State Health Facilities*, 360 N.W.2d 808, 809 (Iowa 1985))). "The [c]ommissioner is entitled to a substantial amount of latitude in making . . . inherently fact-based determination[s]." *Oscar Mayer*, 483 N.W.2d at 829. However, while discretion is left to the agency, Iowa Code section 17A.19 makes it clear that if the agency's findings of fact are not supported by substantial evidence, the district court is proper to reverse because "the person seeking judicial relief [has] been prejudiced" by this unsubstantiated decision. *See* Iowa Code § 17A.19(10).

Obviously this is an issue closely tied to the medical testimony and facts present. When the commissioner reviewed this information, she concluded that the first knee injury at IBP was the aggressor in the subsequent injuries, and was, for all practical purposes, "the real culprit" when the later injuries occurred. Thus, causation was evident and a disability award was necessary. Looking at those same facts, and weighing them differently, the district court concluded that the slip and fall caused the increased injury and the initial injury would have healed to its maximum extent had this second injury not occurred. Accordingly, causation could not be shown and any additional award was not justified.

"An agency's decision does not lack substantial evidence because inconsistent conclusions may be drawn from the same evidence." *Second Injury Fund v. Shank*, 516 N.W.2d 808, 812 (Iowa 1994). This statement is the hallmark of this case. Regardless that there is contradictory medical evidence present, "[i]n such a case we cannot interfere with the commissioner's findings of fact." *Id.* If a reasonable person could have concluded the initial injury exacerbated the later problems and, thereby, amounted to proximate cause, the district court erred by reversing the commissioner's ruling. Stated another way, because

> [t]he review is for correction of errors at law, not de novo, . . . the findings of the industrial commissioner have the effect of a jury verdict. . . . The possibility of drawing inconsistent conclusions from the same evidence does not mean an agency's decision lacks substantial support. In the case of conflict in the evidence we are not free to interfere with the commissioner's findings.

*Kostelac v. Feldman's, Inc.*, 497 N.W.2d 853, 856 (Iowa 1993) (citations omitted).

First, it must be noted that only one doctor treated Harpole throughout her periods of injury, from the first injury to the last. This was Harpole's treating physician and orthopedic surgeon, Dr. Wirtz. Of the numerous medical opinions provided in the record, his most specifically analyzed Harpole's condition, considering each injury separately and discussing the effect of the non-work-related slip and fall. Dr. Wirtz concluded that any subsequent impairment Harpole suffered was a result of the slip and fall and not the initial left knee injury, although he also recognized that her first injury had something to do with her gait problem and her increased pain to her right knee and lower back. Dr. Wirtz's opinion was overwhelmingly relied upon by the district court. The other medical testimony espoused a differ-

ent view that the initial injury, while exacerbated by the slip and fall, was the real instigator of her recurring injury and pain.

1) Dr. Wirtz—He maintained that the initial left knee injury resulted in a 20% permanent partial impairment of Harpole's left leg. Following her initial surgeries, Harpole was required to wear an immobilizer on her left leg. Regarding her non-work-related slip and fall, Dr. Wirtz concluded that this would be a "significant contributor to this [additional] loss of motion; therefore, would be the cause of the present restrictions." Dr. Wirtz concluded that had Harpole not fallen the second time, her recovery would have been complete to its maximum potential. After Harpole's third fall at IBP, Wirtz concluded this was a temporary aggravation of her 1993 slip and fall. When Harpole developed right knee pain in 1995, Wirtz found this was caused by a congenital defect in her right knee and only minimally by the added burden of Harpole favoring her right knee over her left knee because of her initial injury. Oddly, Wirtz concluded that the right knee and lower back pains were temporary soft tissue injuries even though he also felt that her right knee problems were genetic. The deputy commissioner recognized that in this regard, "Dr. Wirtz's opinion does not make much sense." The commissioner concurred.

2) Dr. Misol—He blamed Harpole's fall in the IBP cafeteria on the fact that the removal of her patella necessitated by her first knee injury caused balance and stability problems which were also present when she slipped and fell in the non-work-related setting. Moreover, the immobilizer she was wearing when she fell the second time likely had something to do with her fall. She was only wearing the immobilizer because of her first knee injury. His opinion was that the second fall was a factor in her increased injury, but the real force behind it was her initial knee injury at IBP.

3) Dr. Tearse—He concluded that the exacerbation caused by Harpole's injury while working at Perry Manor was a result of the underlying worsened condition caused by the first left knee injury in 1991. He was also of the opinion that she had obtained maximum healing of her left knee, therefore he did not expect her other conditions to improve.

4) Dr. Beattie—He concluded that Harpole's right knee and lower back problems were chronic and would only worsen as time goes by. These injuries were caused by the gait problem resulting from the removal of Harpole's patella necessitated by her 1991 fall.

5) Dr. Koontz—He also concluded that Harpole would have permanent pain from her right knee and lower back equaling 5% permanent impairment caused by the removal of Harpole's patella. The commissioner found this opinion, coupled with Dr. Beattie's to be more persuasive than Dr. Wirtz's regarding these new injuries.

■ To summarize, only Dr. Wirtz posited that the second fall was the true cause of the later injuries. The other four doctors insisted that the first fall precipitated the later injuries, especially due to the removal of Harpole's patella. Each found that the subsequent pain and impairment were directly attributable to the first injury. The district court dismissed these latter opinions in favor of Dr. Wirtz's. Using just the Wirtz opinion, one could conclude that it was not reasonable to attribute the later injury to IBP. But considering every opinion together and giving them the same weight afforded by the commissioner, there was substantial evidence to affirm. Although the weight of the medical experts' testimony varied, we cannot say it was unsupportable for the commissioner to find a causal relationship given everything

in the record. When such is the assessment, the district court cannot reverse the commissioner's decision. We have said:

> Whether an injury has a direct causal connection with the employment or arose independently thereof is essentially within the domain of expert testimony. The weight to be given such an opinion is for the finder of fact, in this case the commissioner....
>
> ... The commissioner as trier of fact has the duty to determine the credibility of the witnesses and to weigh the evidence....

*Dunlavey v. Economy Fire & Cas. Co.*, 526 N.W.2d 845, 853 (Iowa 1995) (citations omitted).

■ "Ultimately, the question is not whether the evidence might support a different finding, but whether the evidence supports the findings actually made." *Sherman v. Pella Corp.*, 576 N.W.2d 312, 320 (Iowa 1998). Even if "as fact finder, we might have found otherwise," we must affirm if there is enough evidence to support the finding. *Id.* The commissioner's decision is supported by substantial evidence. The district court erred in not so finding.

We reverse the decision of the district court and remand for entry of judgment affirming the agency decision. Costs in these consolidated cases are assessed against IBP, Inc.

**REVERSED AND REMANDED ON APPEAL; WRIT SUSTAINED.**