Juan Mario GARCIA, Appellant,

v.

NAYLOR CONCRETE CO.
and National American
Insurance, Appellees.

No. 01–0341.

Supreme Court of Iowa.

July 17, 2002.

Rehearing Denied Aug. 27, 2002.

Stephen N. Greenleaf and Dai Gwilliam of Lynch, Greenleaf & Michael, LLP, Iowa City, for appellant.

Rene Charles Lapierre of Klass, Stoik, Mugan, Villone, Phillips, Orzechowski, Clausen & Lapierre, L.L.P., Sioux City, for appellees.

CARTER, Justice.

Claimant, Juan Mario Garcia, appeals from an order affirming the industrial commissioner's finding that his claim for workers' compensation benefits is barred by Iowa Code section 85.16(2) (1997) because his intoxication was a substantial factor in causing his injury. He denies that he was intoxicated and contends that his alcohol consumption was not a substantial factor in causing his injury. After reviewing the record and considering the arguments presented, we affirm the decision of the district court.

The evidence presented to the industrial commissioner was substantially as follows. On the morning of September 30, 1997, claimant was working as a welder for Naylor Concrete Co. at a shopping mall project in Coralville. Claimant and his coworkers were welding decking to the bar joists of a metal roof over the mall. When he arrived shortly before 7 a.m. that morning, he climbed a twenty-foot ladder to gain access to the roof. He then walked about ninety feet across four-inch bar joists to the area where he was to weld decking on the roof. Claimant was wearing a welder's belt, which held his welding tools and weighed about thirty pounds. While welding, he wore a welder's helmet with a dark lens to protect his eyes from the bright light of the weld. Although claimant was wearing a safety harness, Naylor Concrete did not provide any cables for the welders to tie off their harnesses to a safety lanyard.

Claimant began welding sixty-foot rows of decking, making thirteen or fourteen

welds in each row. He was bent forward with his feet parallel, pushing the decking down onto the bar joists with the use of his body weight. There were no barriers, warning signals, cables or other markings toward the edge of the building. Claimant completed six or seven of the sixty-foot rows before starting on shorter, thirty-foot rows. As claimant reached the end of the first thirty-foot row he was welding, he slid off the edge of the roof. The fall occurred at approximately 7:55 a.m. The injuries sustained by claimant included fractures of the left wrist, left elbow, left eye socket, right wrist, and right knee.

Emergency personnel arrived to transport claimant by ambulance to the University of Iowa Hospitals and Clinics. Fluids were administered intravenously to the claimant during the transport. Upon his arrival at the hospital, urine and blood samples were taken. An expert witness from the state crime lab testified before the agency that the alcohol concentration revealed by these tests was .094 thirty minutes after claimant's fall and after he had received fluids intravenously.

Claimant filed a petition seeking workers' compensation benefits. The employer resisted payment of such benefits, raising voluntary intoxication under Iowa Code section 85.16(2) as an affirmative defense. Claimant testified at the arbitration hearing that when he was working near the edge of the roof the metal edging bent downward causing him to slide off. He stated that on the day before the accident he and his coworkers left work early due to extremely heavy winds. He testified that they purchased some beer about 2 p.m. and returned to their motel. According to claimant he and his companions ate dinner at 5 p.m., went to a bar where they did some drinking, returned to their room for more drinking, and retired about 10:45 p.m. He testified that between the time

he left work and the time he retired that evening he had consumed approximately eighteen twelve-ounce cans of beer. He stated that he had drunk no beer or other alcoholic substance subsequent to 10:45 p.m. on the night before the injury.

The deputy commissioner denied benefits on the basis that the cause of claimant's injuries was his intoxication. That decision was affirmed on an intra-agency appeal. The agency decision was also affirmed by the district court on a petition for judicial review. Other facts necessary to the decision on appeal will be discussed in our consideration of the legal issues presented.

### I. Scope of Review.

■■■■ Statutory law dictates how we review appeals from administrative actions. Iowa Code § 17A.19(8). The district court functions solely in an appellate capacity to correct errors of law on the part of the agency. *IBP, Inc. v. Harpole*, 621 N.W.2d 410, 414 (Iowa 2001); *Ahrendsen v. Iowa Dep't of Human Servs.*, 613 N.W.2d 674, 676 (Iowa 2000); *Glowacki v. State Bd. of Med. Exam'rs*, 516 N.W.2d 881, 884 (Iowa 1994). In the appeal of the district court's review of the agency decision, this court is limited to determining whether the district court correctly applied the law in exercising the review provided by section 17A.19(8). When the agency decision turns on factual findings, both the district court and this court are bound by the industrial commissioner's findings if they are supported by substantial evidence in the record. *Harpole*, 621 N.W.2d at 414; *Bergen v. Iowa Veterans Home*, 577 N.W.2d 629, 630 (Iowa 1998).

### II. Claimant is Precluded From Receiving Benefits by the Intoxication Disqualification Contained in Section 85.16(2).

■■■ The employer's statutory defense based on intoxication provides:

No compensation under this chapter shall be allowed for an injury *caused:*

. . . .

2. By the employee's intoxication, which did not arise out of and in the course of employment but which was due to the effects of alcohol or another narcotic, depressant, stimulant, hallucinogenic, or hypnotic drug not prescribed by· an authorized medical practitioner, *if the intoxication was a substantial factor in causing the injury.*

Iowa Code § 85.16(2) (emphasis added).

 For the intoxication defense to apply, the intoxication must have been both the cause in fact of the injury and a substantial factor in producing it. *Reddick v. Grand Union Tea Co.,* 230 Iowa 108, 117, 296 N.W. 800, 804 (1941). The burden is on the employer to prove the elements of this defense by a preponderance of the evidence. *Id.* The term "intoxication" is not defined by statute.

 Claimant urges this court to adopt the definition of intoxication discussed in *Benavides v. J.C. Penney Life Insurance Co.,* 539 N.W.2d 352 (Iowa 1995), to determine whether he was intoxicated. In that case, we considered an insurance-policy exclusion based on intoxication. We opined that:

A person is "under the influence of alcohol" and therefore intoxicated when one or more of the following are true: (1) the person's reason or mental ability has been affected; (2) the person's judgment is impaired; (3) the person's emotions are visibly excited; and (4) the person has, to any extent, lost control of bodily actions or motions.

*Benavides,* 539 N.W.2d at 355 (citations omitted). We recognized in *Benavides* that the blood-alcohol level revealed by chemical testing is important evidence on the question of intoxication. *Id.* We ac-

cept claimant's invitation to rely on the *Benavides* standard of intoxication in deciding whether he was intoxicated.

The evidence shows that claimant consumed a large amount of alcohol the evening before his injury and that his blood-alcohol level was still at .094 nearly thirty minutes after his fall and after receiving fluids intravenously. The employer presented expert testimony from Michael Rehberg, a toxicologist with the State Criminalistics Laboratory, which indicated that claimant's ability to perform his job would have been impaired by the level of alcohol in his blood. Specifically, this witness testified that this level

would impair his reaction time, his visual acuity, his actual ability to see clearly and perceive the world about him. It would have affected his peripheral vision, his ability to see to the side—it would have closed in so he could have been experiencing tunnel vision, but certainly loss of vision to the side—his balance, his coordination, his dexterity, his actual ability to see and perceive the world around him and decide how to act within that world, and anything that he did with regard to divided attention where you look at one thing, think about another thing, and then put those two factors together and conduct your business, all those kinds of things would have been affected.

We conclude that this testimony constitutes substantial evidence to support a finding that claimant was intoxicated at the time of his injury based on the *Benavides* standards.

 As previously noted, section 85.16(2) also requires the employer to prove claimant's intoxication was a cause in fact of the injury and a substantial factor in producing it. This was not an easy issue for the industrial commissioner to decide. The circumstances of claimant's

fall would support a finding that it was the result of the hazardous position in which he was placed while working near an unstable edge of the roof and might have occurred irrespective of his intoxication. However, in challenging an agency finding, a party may not succeed merely by showing that the evidence would support a different conclusion than the one that the agency reached. *S.E. Iowa Coop. Elec. Ass'n v. Iowa Utils. Bd.*, 633 N.W.2d 814, 818 (Iowa 2001). In order to succeed, it must be demonstrated that, as a matter of law, the finding that the agency made was not supported by substantial evidence. *Id.* Evidence is substantial if a reasonable person would consider it sufficient to support the agency's finding. *Second Injury Fund v. Klebs*, 539 N.W.2d 178, 180 (Iowa 1995).

The expert toxicologist who testified on behalf of the employer stated:

Q. Based on your training, experience, knowledge, and within a reasonable degree of certainty, do you have an opinion whether Mr. Garcia's intoxication level of alcohol was a substantial factor in causing his fall? A. Yes, the level of alcohol in Mr. Garcia's body would have impaired his ability to conduct the job, would have been affecting him, would have been a meaningful factor in this accident, fall.

Q. Why? A. To achieve this level in his body at this time, he either had to drink in a different way than he states or he had to drink more alcohol than he states. But be that as it may, how he got there doesn't make any difference. The fact that he was there, that he had this alcohol load in his body at the time of this accident, to me as a toxicologist shows me that the alcohol was one of the causes of this accident.

Although the agency was not required to credit this testimony, it did. We conclude that this testimony constituted substantial evidence to support the industrial commissioner's finding on the causation issue. We have considered all issues presented and conclude that the decision of the district court should be affirmed.

**AFFIRMED.**