**IN THE COURT OF APPEALS OF IOWA**

No. 16-1218
Filed May 3, 2017

**RHONDA BANWART, Individually
and as Next Friend of A.B. and M.B., Minor Children,**
    Plaintiff-Appellant,

**vs.**

**50TH STREET SPORTS, L.L.C. d/b/a DRAUGHT HOUSE 50,**
    Defendant-Appellee.
_____

        Appeal from the Iowa District Court for Polk County, Jeffrey D. Farrell,

Judge.


        The plaintiff appeals from the district court's grant of summary judgment in

favor of the defendant, dismissing the plaintiff's petition alleging dramshop

liability. **AFFIRMED.**


        Michael T. Norris of Slater & Norris, P.L.C., West Des Moines, for

appellant.

        Adam D. Zenor of Grefe & Sidney, P.L.C., Des Moines, for appellee.


        Considered by Mullins, P.J., and Bower and McDonald, JJ.

**MULLINS, Presiding Judge.**

Rhonda Banwart, individually and as next friend of minor children A.B. and M.B., appeals from the district court's grant of summary judgment in favor of 50th Street Sports, L.L.C., d/b/a Draught House 50 ("Draught House"), dismissing Banwart's petition alleging dramshop liability. Upon our review, we affirm.

### I.      Background Facts and Proceedings

On February 27, 2015, at approximately 4:30 p.m., Michelle Campbell met some of her coworkers at Draught House for food and drinks after work. While at Draught House, Campbell consumed three beers and ate food that had been ordered for the table. Campbell did not consume any alcohol before she arrived or after she left Draught House. The group put the food and drinks they ordered on an open tab. Two of Campbell's coworkers paid for the group's tab before leaving around 7:30 p.m. Campbell did not order or consume any other drinks that evening. Campbell later testified that her group talked at a "normal voice level for a bar on a Friday evening."

Campbell left Draught House around 8:30 p.m. Shortly thereafter, the front end of Campbell's vehicle collided with the rear end of Banwart's vehicle, which was stopped at a stop light. Campbell later testified at her deposition that she felt "in control" and able to drive at the time she left Draught House. She also testified she was slowing down to stop behind Banwart's car when she received a phone call, became distracted and looked away from the road to see who was calling, and then immediately collided with Banwart's car. Campbell further testified her airbag did not deploy and she did not suffer any injuries as a

result of the accident. The police report from the accident shows both vehicles had moderate damage but appeared to be operational.

A local police officer arrived at the scene to investigate the accident. The officer smelled the odor of alcohol emanating from Campbell's vehicle when he approached. He observed Campbell had bloodshot and watery eyes, slurred speech, and difficulty following his instructions. The officer asked Campbell where she was coming from and if she had been drinking. Campbell told the officer she had had three beers at Draught House. She also told the officer she felt "buzzed" but still in control. Campbell did not stumble as she got out of her vehicle and had no problems walking or balancing. Campbell completed three field sobriety tests at the officer's request. The officer later testified Campbell's emotions varied between joking and laughing or crying during the tests and he observed several signs of intoxication. Campbell also complied with a Datamaster test, which showed she had a blood alcohol level of .143. Campbell was subsequently charged with operating while intoxicated (OWI), first offense, and pled guilty.

On April 2, 2015, Banwart filed a petition at law against Draught House, alleging Draught House was liable for the collision due to its sale and service of alcoholic beverages to Campbell and seeking damages related to the accident. Draught House filed a motion for summary judgment, which the district court granted. Banwart appeals.

## II. Standard of Review

We review a district court's grant of summary judgment for correction of errors at law. *See Goodpaster v. Schwan's Home Serv., Inc.*, 849 N.W.2d 1, 6

(Iowa 2014). Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Iowa R. Civ. P. 1.981(3); *Sanford v. Fillenwarth*, 863 N.W.2d 286, 289 (Iowa 2015). "[A] 'factual issue is "material" only if "the dispute is over facts that might affect the outcome of the suit."'" *Peak v. Adams*, 799 N.W.2d 535, 542 (Iowa 2011) (quoting *Phillips v. Covenant Clinic*, 625 N.W.2d 714, 717 (Iowa 2001)). "An issue of fact is 'genuine' if the evidence is such that a reasonable finder of fact could return a verdict or decision for the nonmoving party." *Parish v. Jumpking, Inc.*, 719 N.W.2d 540, 543 (Iowa 2006). The burden is on the moving party to show the nonexistence of a material fact. *Pillsbury Co. v. Wells Dairy, Inc.*, 752 N.W.2d 430, 434 (Iowa 2008). "However, the nonmoving party may not rest upon the mere allegations of h[er] pleading but must set forth specific facts showing the existence of a genuine issue for trial." *Hlubek v. Pelecky*, 701 N.W.2d 93, 95 (Iowa 2005) (citing Iowa R. Civ. P. 1.981(5)).

In determining whether summary judgment is appropriate, the court shall consider the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits. Iowa R. Civ. P. 1.981(3). We must view the facts "in the light most favorable to the nonmoving party" and "draw all legitimate inferences the evidence bears in order to establish the existence of questions of fact." *Jones v. Univ. of Iowa*, 836 N.W.2d 127, 140 (Iowa 2013) (quoting *Pitts v. Farm Bureau Life Ins. Co.*, 818 N.W.2d 91, 96–97 (Iowa 2012)). "An inference is legitimate if it is 'rational, reasonable, and otherwise permissible under the governing substantive law.' On the other hand, an inference is not legitimate if it is 'based upon speculation or conjecture.'" *Smith v. Shagnasty's Inc.*, 688 N.W.2d 67, 71

(Iowa 2004) (quoting *McIlravy v. N. River Ins. Co.*, 653 N.W.2d 323, 328 (Iowa 2002)). "If reasonable minds may differ on the resolution of an issue, a genuine issue of material fact exists." *Id.* (quoting *McIlravy*, 653 N.W.2d at 328).

### III. Analysis

The legislature enacted the dramshop statute "for the protection of the welfare, health, peace, morals, and safety of the people of the state." Iowa Code § 123.1 (2015). It also declared "all its provisions shall be liberally construed for the accomplishment of that purpose." *Id.* The statute provides, in pertinent part:

> Any person who is injured in person or property or means of support by an intoxicated person or resulting from the intoxication of a person, has a right of action for all damages actually sustained, severally or jointly, against any licensee or permittee . . . who sold and served any beer, wine, or intoxicating liquor to the intoxicated person when the licensee or permittee knew or should have known the person was intoxicated, or who sold to and served the person to a point where the licensee or permittee knew or should have known the person would become intoxicated.

*Id.* Essentially, this section gives "a remedy to innocent victims harmed by persons who are served excess liquor by licensees and permittees." *Sanford*, 863 N.W.2d at 290.

On appeal, it is undisputed Draught House "sold and served" Campbell three beers. Iowa Code § 123.92(1)(a). The question before us, then, is whether Draught House "knew or should have known" Campbell "was intoxicated" or "would become intoxicated" when Draught House sold and served the beers to her. *Id.*

In *Smith*, the supreme court recognized the following as indicators of intoxication: "(1) the person's reason or mental ability has been affected; (2) the person's judgment is impaired; (3) the person's emotions are visibly excited; and

(4) the person has, to any extent, lost control of bodily actions or motions." 688 N.W.2d at 72 (quoting *Garcia v. Naylor Concrete Co.*, 650 N.W.2d 87, 90 (Iowa 2002)). Additionally, "[e]vidence of a person's blood-alcohol level, if available, is important evidence of intoxication." *Id.* Nevertheless, "[n]o particular degree of intoxication is required." *Id.* (citation omitted). A plaintiff may prove "scienter in a dramshop action . . . by employing 'either a subjective or an objective standard in establishing the defendant's knowledge." *Id.* (quoting *Hobbiebrunken v. G & S Enters., Inc.*, 470 N.W.2d 19, 22 (Iowa 1991)).

In its order granting summary judgment, the district court found Draught House was not liable for damages caused as a result of the accident between Campbell and Banwart because Banwart had not presented any evidence that Draught House knew or should have known Campbell was intoxicated or would become intoxicated before it sold and served alcoholic beverages to her. The court acknowledged that, although "[t]he evidence from the accident scene and officer investigation is highly material to show that Ms. Campbell was intoxicated at the time she left Draught House," the question was "whether Draught House knew or should have known that Ms. Campbell was intoxicated or would become intoxicated at the time it served her."

The court noted there was no evidence Campbell had displayed signs of intoxication while at Draught House—Campbell had not used loud or abusive language, she had not confronted bar staff or other patrons, she had not been seen bumping into people and did not appear unbalanced while walking or standing, and she did not appear to be visibly excited or emotional. The court also found there was "no evidence to show that Draught House knew or should

have known that Ms. Campbell was intoxicated or would become intoxicated based on the number of drinks served." The court noted the evidence was undisputed "Campbell was served three beers during a timeframe of four hours." Further, "[t]here [wa]s no evidence as to the size or percentage of alcohol in the beers consumed by Ms. Campbell." And there was also "no evidence as to [Campbell's] weight or other factors that might impact her level of intoxication." Thus, the court determined there was no genuine issue of material fact that Draught House knew or should have known Campbell was intoxicated or would become intoxicated when it served her.

The record shows Campbell arrived at Draught House on Friday after work for a few drinks with her coworkers to decompress after a busy week. She stayed there for about four hours, consuming three beers during that time. She also ate some food that had been ordered for the table. Campbell received her last drink at around 7:30 p.m. when her supervisor paid for a third and final round of drinks for the table and left. Campbell left Draught House in her vehicle approximately one hour later. Although Campbell's Datamaster results showed her blood alcohol level was over the legal limit of .08 after she left Draught House and the officer reported he observed signs of intoxication when investigating Campbell for an OWI after the accident with Banwart occurred, Draught House did not have that evidence at the time it served her a third beer over an hour before. Indeed, even when the facts are viewed in the light most favorable to Banwart, there is simply no evidence in the record that Campbell exhibited any signs of intoxication while she was at Draught House before she was sold and served alcoholic beverages. Furthermore, there is no evidence to show Draught

House had any reason to know serving a third beer to Campbell would cause her to become intoxicated.

Based on the record before us, we agree with the district court Banwart did not present any evidence from which a jury might reasonably infer Draught House's employees knew or should have known Campbell was or would become intoxicated at the time they served her. Accordingly, we affirm the district court's order granting summary judgment in favor of Draught House on Banwart's claim of dramshop liability.

**AFFIRMED.**