**IN THE COURT OF APPEALS OF IOWA**

No. 16-2047
Filed January 10, 2018

**LARRY STANLEY,**
        Plaintiff-Appellant,

**vs.**

**EMPLOYMENT APPEAL BOARD,**
        Defendants-Appellees.
_____

        Appeal from the Iowa District Court for Polk County, Lawrence P. McLellan,

Judge.


        An employee appeals from a district court's decision granting

unemployment insurance benefits.  **AFFIRMED.**


        Marlon D. Mormann, Des Moines, for appellant.

        Rick Autry of Employment Appeal Board, Des Moines, for appellee.


        Heard by Vaitheswaran, P.J., and Potterfield and McDonald, JJ.

**MCDONALD, Judge.**

Larry Stanley worked as a driver for HD Supply Management, Inc., beginning in June 1997. Stanley sustained a work-related injury on July 18, 2014, and did not work between the date of the injury and September 10, 2015, when his employment was terminated. Stanley did receive workers' compensation benefits for a temporary total disability during this time period. After the termination of his employment, Stanley applied for unemployment insurance benefits. The agency found Stanley was monetarily eligible for benefits with an established weekly benefit in the amount of $243.00 and a maximum benefit of $2916.93. He nonetheless appealed, contending he was entitled to greater weekly and maximum benefits based on his contention he was entitled to substitute higher-earning quarters for lower-earning quarters in the base period used to determine his eligibility benefits. The agency disagreed, and the district court disagreed. Stanley timely filed this appeal.

The Iowa Administrative Procedure Act governs our review of agency action. *See IBP, Inc. v. Harpole*, 621 N.W.2d 410, 414 (Iowa 2001). If a party's substantial rights have been prejudiced by agency action taken in contravention of the administrative procedure act, then we may reverse or modify the agency's action. *See* Iowa Code § 17A.19(10) (2015). Otherwise, we affirm the agency's action. We do not afford deference to an agency's legal interpretations "unless that interpretive authority has clearly been vested in the agency." *Irving v. Emp't Appeal Bd.*, 883 N.W.2d 179, 185 (Iowa 2016) (citing *Renda v. Iowa Civil Rights Comm'n*, 784 N.W.2d 8, 11 (Iowa 2010)). Absent an express grant of interpretive authority, "we as a general matter do not grant deference to an agency when the

legal terms being construed have independent legal meaning not within its expertise." *Id.* None of the terms presented in this case are so complex or technical as to warrant deference to the agency's interpretation. *See id.*

Iowa Code chapter 96 is known as the Iowa Employment Security Law. *See* Iowa Code § 96.1. The chapter governs Iowa's unemployment compensation program. When a claimant applies for unemployment compensation benefits, the agency is required to make "an initial determination of eligibility for unemployment insurance benefits." Iowa Admin. Code r. 871-24.7(3) (2015). The claimant's eligibility for benefits is determined by the claimant's earning history over the "base period." The "base period" is "the period beginning with the first day of the five completed calendar quarters immediately preceding the first day of an individual's benefit year and ending with the last day of the next to the last completed calendar quarter immediately preceding the date on which the individual filed a valid claim." Iowa Code § 96.19(3). In other words, the base period is the first four of the last five quarters completed before the quarter in which the claim was filed. Code section 96.4 sets forth the earnings criteria over the base period necessary to establish "monetary eligibility"—that is, eligibility for the receipt of benefits. Section 96.4(4)(a) provides:

> 4. a. The individual has been paid wages for insured work during the individual's base period in an amount at least one and one-quarter times the wages paid to the individual during that quarter of the individual's base period in which the individual's wages were highest; provided that the individual has been paid wages for insured work totaling at least three and five-tenths percent of the statewide average annual wage for insured work, computed for the preceding calendar year if the individual's benefit year begins on or after the first full week in July and computed for the second preceding calendar year if the individual's benefit year begins before the first full week in July, in that calendar quarter in the individual's base

period in which the individual's wages were highest, and the individual has been paid wages for insured work totaling at least one-half of the amount of wages required under this paragraph in the calendar quarter of the base period in which the individual's wages were highest, in a calendar quarter in the individual's base period other than the calendar quarter in which the individual's wages were highest. The calendar quarter wage requirements shall be rounded to the nearest multiple of ten dollars.

Stated differently, the claimant must have (1) base period wages greater than 125% of an individual's highest-earning quarter within the base period, (2) highest-earning-quarter wages at least 3.5% of the statewide average annual wage for insured work, and (3) second-highest-earning-quarter wages at least 50% of the wages required by (2). As relevant here, in 2014 the statewide average annual wage for insured work was $42,327.64, of which 3.5%, rounded, is $1480. Half of that is $740.

With that background, we turn to the specific facts and circumstances of Stanley's case. The parties agree Stanley's base period for purposes of determining his eligibility for benefits consists of the third and fourth quarters of 2014 and the first and second quarters of 2015. *See* Iowa Code § 96.19(3) (defining "base period"). In the third quarter of 2014, Stanley received wages in the amount of $3137.34 for work performed in that quarter prior to his injury. In the fourth quarter of 2014, Stanley performed no work and received no wages or payments for insured work. In the first quarter of 2015, Stanley received $5609.02 as a profit sharing bonus for work he performed prior to July 18, 2014. Stanley does not dispute these payments constitute "wages" for purposes of this case. *See* Iowa Code § 96.19(41)(a) (defining "wages" to mean "all remuneration for personal services, including commissions and bonuses"). In the second quarter of 2015,

Stanley received $4.42 as a refund on a stock purchase plan. The agency found this refund did not constitute "wages" for the purposes of determining eligibility. It is not disputed that Stanley did not work in the final three quarters of his base period due to his injury. Based on this earnings history, the agency found Stanley was monetarily eligible for benefits because he was paid wages in excess of $1480 in one quarter of the base period, he was paid wages in excess of $740 in a second quarter of the base period, and Stanley's total compensation for the base period was greater than 125% of the wages paid in his highest-earning quarter.

Stanley contends his benefit should have been calculated differently. Specifically, under certain circumstances, Iowa's unemployment compensation program allows for the substitution of quarters in the "base period" for an "individual who has received workers' compensation under Iowa Code chapter 85 during a healing period or temporary total disability benefits or indemnity insurance benefits for an extended period of time." Iowa Admin. Code r. 871-24.7(1). When substitution applies, "the department shall exclude certain quarters in the base period and substitute three or more consecutive calendar quarters immediately preceding the base period which were prior to the workers' compensation or indemnity insurance benefits." Iowa Admin. Code r. 871-24.7(1). The statutory provision allowing for substitution provides:

> 1. The department shall exclude three or more calendar quarters from an individual's base period, as defined in section 96.19, subsection 3, if the individual received workers' compensation benefits for temporary total disability or during a healing period under section 85.33, section 85.34, subsection 1, or section 85A.17 or indemnity insurance benefits during those three or more calendar quarters, if one of the following conditions applies to the individual's base period:

a. The individual did not receive wages from insured work for three calendar quarters.

b. The individual did not receive wages from insured work for two calendar quarters and did not receive wages from insured work for another calendar quarter equal to or greater than the amount required for a calendar quarter, other than the calendar quarter in which the individual's wages were highest, under section 96.4, subsection 4, paragraph "a".

2. The department shall substitute, in lieu of the three or more calendar quarters excluded from the base period, those three or more consecutive calendar quarters, immediately preceding the base period, in which the individual did not receive such workers' compensation benefits or indemnity insurance benefits.

Iowa Code § 96.23. In support of his argument, Stanley relies on certain language in the agency's rules:

The qualifying criteria for substituting quarters in the base period are that the individual:

a. Must have received workers' compensation benefits under Iowa Code chapter 85 or indemnity insurance benefits for which an employer is responsible during the excluded quarters, and

b. Did not *work in and receive wages* from insured work for

(1) Three or more calendar quarters in the base period, or

(2) Two calendar quarters and lacked qualifying wages from insured work during another quarter of the base period.

Iowa Admin. Code r. 871-24.7(3) (emphasis added). Stanley argues that while he did receive wages in two quarters he did not both "work in and receive wages" in both of those quarters because the wages he received in the first quarter of 2015 were profit-sharing payments. Thus, he concludes, he is eligible for substitution.

At first glance, Stanley's argument has some appeal. On a second look, less so. Upon reviewing the criteria under which substitution is allowed it becomes clear that the criteria for establishing eligibility for the receipt of benefits and the criteria allowing substitution of quarters in the base period are mutually exclusive. If a claimant satisfies the criteria to be monetarily eligible for benefits, the claimant cannot also satisfy the substitution criteria. The substitution provision is thus

designed to allow a claimant who received workers' compensation benefits and who is not otherwise eligible for the receipt of unemployment insurance benefits an opportunity to substitute quarters in the base period for the purpose of becoming monetarily eligible. The statute is not designed to allow an employee who is already monetarily eligible to substitute higher-earning quarters into the base period for the purpose of increasing the weekly and maximum benefits.

In arguing to the contrary, Stanley simply ignores relevant regulations that make clear a claimant who is already monetarily eligible is not entitled to substitution. For example, Iowa Administrative Code rule 871-24.7(1) provides substitution is available only where the claimant "has insufficient wage credits in the base period." Stanley has sufficient wage credits and is thus not eligible for substitution. Administrative Code rule 871-24.7(3) provides the agency shall substitute quarters, "[i]f the individual has no wage records or lacks qualifying wage requirements." Again, Stanley has qualifying wage requirements and is thus not eligible for substitution. Finally, the administrative code specifically disallows substitution on the facts presented: "The request for retroactive substitution of base period quarters shall be denied if the individual received workers' compensation or indemnity insurance benefits in: (1) At least three base period quarters but the individual is currently monetarily eligible with an established weekly and maximum benefit amount." Iowa Admin. Code r. 871-27.4(b)(1)." As noted repeatedly herein, Stanley is monetarily eligible with an established weekly benefit and established maximum benefit. Substitution is thus disallowed. The agency's rules correctly implement the statutory provisions regarding substitution.

For these reasons, we conclude the agency did not act irrationally, illogically, or otherwise err in determining Stanley was eligible for the receipt of unemployment compensation benefits or in determining the amount of Stanley's weekly benefit and maximum benefit. We thus affirm the judgment of the district court.

**AFFIRMED.**